STATE OF CONNECTICUT *v.* DAVID JACKSON
(8176)

NORCOTT, FOTI and LANDAU, Js.

Argued June 11—decision released September 4, 1990

*Beth A. Merkin,* assistant public defender, for the appellant (defendant).

*Mary Lesser,* deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Robert O'Brien,* assistant state's attorney, for the appellee (state).

LANDAU, J. The defendant appeals from the judgment of conviction, after a jury trial, of burglary in the third degree in violation of General Statutes § 53a-103. He claims that the trial court (1) should have suppressed certain illegally obtained evidence, (2) erroneously enlarged the crime for which he was charged by incorrectly instructing the jury on the definition of "building," (3) gave a "no adverse inference" instruction that complied with neither General Statutes § 54-84 (b) nor his request to charge, and (4) improperly instructed the jury that the defendant, through counsel, had admitted that there was a burglary. We find these claims to be without merit and, accordingly, affirm the trial court's judgment.

## I

The court could reasonably have found the following facts at the suppression hearing. In December, 1988, Officer Tracy Lamb of the New Haven police department arrived at 87 Norton Street, a three story multifamily house, upon receiving a report of a triggered burglar alarm. While looking at the building, Lamb heard the alarm, which had stopped, sound again. Lamb, seeing the defendant exit the front door of the building, took him to a police car in order to detain him pending investigation. At that time, the defendant volunteered a statement to the effect that he was in the building visiting a person named "Michelle" on the second floor. No Miranda[1] warnings were given to the defendant before he made his statement.

Lamb, thereafter, questioned the second floor tenant. The tenant told Lamb that someone whom she did not know had knocked on her door and asked to be let in until the police left. She refused to do so. She further stated that he then asked for her name, which she gave him. After speaking with the tenant, Lamb arrested the defendant for burglary.

The defendant moved to suppress his statement, claiming that it was, in the absence of Miranda warnings, the product of an illegal custodial interrogation. The trial court denied the motion, finding that the statement was volunteered and not the result of interrogation and that, under the circumstances, the officer reasonably stopped the defendant during the pendency of the investigation.[2]

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[2] At the suppression hearing, the parties, and to some extent the court, focused on interrogation as the dispositive issue, because the assistant state's attorney indicated his belief that, for Miranda purposes, the defendant was in custody. This court is not bound by the state's concession. See State v. Williamson, 212 Conn. 6, 12–16, 562 A.2d 470 (1989).

The investigatory detention exception to the probable cause requirement of the fourth amendment is well settled. The police have the right to stop individuals suspected of criminal activity, question them briefly, and perform a limited search for weapons. *Terry* v. *Ohio,* 392 U.S. 1, 22, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). One function of a constitutionally permissible *Terry* stop is to maintain the status quo for a brief period of time to enable the police to investigate a suspected crime, and, if the circumstances so require, the police may place a detainee in a patrol car for a brief period of time. *State* v. *Braxton,* 196 Conn. 685, 689–90, 495 A.2d 273 (1985). While a *Terry* detention must be supported by a reasonable and articulable suspicion of criminal activity; *State* v. *Watson,* 165 Conn. 577, 584, 345 A.2d 532 (1973), cert. denied, 416 U.S. 960, 94 S. Ct. 1977, 40 L. Ed. 2d 311 (1974); *Miranda* warnings are not required. *State* v. *Torres,* 197 Conn. 620, 628, 500 A.2d 1299 (1985).

Here, given that the police were on the premises when the alarm again went off, they were justified in assuming that the burglar was still in the house. The defendant came out immediately thereafter. " 'Proximity in time and place of the stop to the crime is highly significant' in the determination of whether an investigatory detention is justified by reasonable and articulable suspicion." *State* v. *Aillon,* 202 Conn. 385, 400, 521 A.2d 555 (1987), quoting *State* v. *Aversa,* 197 Conn. 685, 691, 501 A.2d 370 (1985).

There were articulable facts sufficient to support a reasonable suspicion that the defendant might be implicated in the crime. The defendant, therefore, was properly detained as a suspect in order to maintain the status quo while the officers ascertained the identities of persons inside the building and verified his state-

ment. Because the defendant was not in custody, he was not entitled to *Miranda* warnings, and the trial court properly denied his motion to suppress.

## II

The defendant next claims that the court's instruction that a whole building, as well as just one unit, can be considered a "building" for the purposes of committing burglary under General Statutes § 53a-103 (a) was incorrect.[3]

Because the defendant made no objection at trial to the challenged instruction, he seeks review of this claim under *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989). The defendant cannot prevail on this claim because he has not satisfied the third prong of *Golding,* namely, that the constitutional violation clearly deprived him of a fair trial. The record demonstrates that there was no enlargement of the crime, and, therefore, no constitutional infringement exists that deprived the defendant of a fair trial.

It is clear that this instruction, read in the context of the court's entire charge, was merely an explanation that the jury could find that the crime had been committed if only one apartment, rather than the entire building, had been broken into. In light of the allegations of the information and the uncontroverted evidence of the burglary of the first floor, a reasonable jury would have heard the instruction to mean that the issue to be resolved was whether there was an entry into the first floor apartment. This belies any suggestion by the defendant that he could have been convicted merely by his presence in the second floor hallway of the building.

---

[3] General Statutes § 53a-103 (a) provides: "A person is guilty of burglary in the third degree when he enters or remains unlawfully in a building with intent to commit a crime therein."

Further, given the factual circumstances of this case, one scant reference to the whole building in the context of the entire instruction was not an impermissible enlargement of the crime. The information specifically alleged that the burglary was committed in the apartment on the first floor. The court read the information to the jury prior to the presentation of evidence, and, in addition, the jury had the information during its deliberations. This alone is sufficient to discount the possibility of enlargement of the crime. See *State* v. *McCalpine,* 190 Conn. 822, 829, 463 A.2d 545 (1983).

## III

The defendant's next claim is that the court improperly instructed the jury regarding his failure to testify.[4] He argues that the phrase "weigh in any exclusive degree" in the instruction was harmful error, because it allowed the jury to weigh his silence along with other evidence consistent with guilt.

The Supreme Court and this court have consistently rejected claims that a "no adverse inference" instruction is reversible error when the substance of the entire instruction informed the jury not to consider the defendant's silence against him. See, e.g., *State* v. *Cobb,* 199 Conn. 322, 325, 507 A.2d 457 (1986); *State* v. *Tatem,* 194 Conn. 594, 599–600, 483 A.2d 1087 (1984);

[4] In charging the jury on the defendant's failure to testify, the court stated: "In this case the defendant did not testify. The law does not compel a defendant to take the witness stand. No presumption of guilt and no favorable inferences may be drawn from the fact that the defendant decided not to testify. You must not permit such a fact to *weigh in any exclusive degree* against the defendant nor should you enter that into your discussions or deliberations as the defendant is not required to establish his innocence. He need not produce any evidence whatsoever. As I indicated before the burden of proof is upon the state to prove the defendant guilty beyond a reasonable doubt; and if the state fails, the defendant has a right to rely on that failure and be acquitted." (Emphasis added.)

*State* v. *Mebane,* 19 Conn. App. 618, 624–25, 563 A.2d 1026, cert. denied, 212 Conn. 817, 565 A.2d 538 (1989); *State* v. *Carpenter,* 19 Conn. App. 48, 56–57, 562 A.2d 35, cert. denied, 213 Conn. 804, 567 A.2d 834 (1989); *State* v. *Reddick,* 15 Conn. App. 342, 351–52, 545 A.2d 1109, cert. denied, 209 Conn. 817, 551 A.2d 758 (1988). In addition, a court need not charge in the exact words of a request; we look to whether the instruction substantially conformed to the charge requested. *State* v. *Falcone,* 191 Conn. 12, 25–26, 463 A.2d 558 (1983).

The charge clearly informed the jury that it could not use the defendant's silence as a factor in its verdict. The court charged in the exact language of General Statutes § 54-84 (b).[5] It also instructed the jury that no presumption of guilt could be drawn, that the fact that the defendant did not testify should not enter into its deliberations or discussions, that the defendant was presumed innocent, that the presumption of innocence alone was sufficient to acquit him, and that it was the state's burden to prove him guilty beyond a reasonable doubt.

The one challenged phrase did not negate a lengthy and perfectly clear and correct instruction given by the trial court on the defendant's failure to testify. The instruction substantially conformed to the charge requested by the defendant. In sum, the record simply does not support the defendant's claim that a new trial is warranted on the basis of this instruction.

IV

At trial, the defendant objected to the court's instruction concerning his counsel's admission that there was a burglary. He based his objection on the ground that

---

[5] General Statutes § 54-84 (b) provides in pertinent part: "Unless the accused requests otherwise, the court shall instruct the jury that they may draw no unfavorable inferences from the accused's failure to testify."

the instruction was tantamount to a directed verdict. On appeal, the defendant abandoned that claim,[6] arguing instead that the court's remarks: (1) infringed his right to assistance of counsel; (2) violated his fifth amendment rights by commenting on his failure to testify; and (3) denied him his right to present a defense. Because these claims were not preserved at trial, the defendant seeks review under *State* v. *Golding,* supra. We conclude that the defendant has not demonstrated that he was denied a fundamental constitutional right and a fair trial, or that he was harmed in any way by the trial court's remarks.

With regard to the defendant's claim that the trial court's comments[7] on his attorney's closing argument impinged on his right to assistance of counsel, it is apparent from the record that counsel had admitted that there was a burglary. It was clear that the burglary admission was a tactical defense strategy. The issue presented by the defendant's counsel to the jury was that of identification and not whether a burglary had in fact occurred.

[6] Claims not briefed are deemed abandoned. *State* v. *James,* 211 Conn. 555, 588, 560 A.2d 246 (1989). The defendant makes no claim in his appellate brief that the trial court directed a verdict by commenting on the admission that there was a burglary.

[7] In explaining what could be considered as evidence, the court stated: "However, if an attorney in the part of his statement or his or her argument makes an admission, that you may consider because when the attorney is standing there in front of you, if he makes a material, significant admission as to certain facts, you may take that as an admission."

When counsel moved for judgment of acquittal, counsel stated: "Your Honor, this is obviously a case of identification and *there is no question that a burglary did occur at 87 Norton Street on the first floor apartment.* I do not think that the state has produced enough evidence to establish that my client was the person responsible for *the burglary.*" (Emphasis added.)

After the state's argument, counsel stated: "Mr. O'Brien [the assistant state's attorney] is correct. *I am not going to stand here and tell you that a burglary did not occur at 87 Norton Street.* However, I will tell you that *this burglary was not committed by my client.* I would submit to you also

· To the extent that the defendant now argues that the court's instruction on his admission of the burglary was a comment on his failure to testify in violation of his fifth amendment rights and his right to present a defense, there is nothing in the court's instruction that either directly, indirectly or by implication communicated to the jury that the defendant either failed to testify or failed to explain something. Compare *Griffin v. California,* 380 U.S. 609, 610, 85 S. Ct. 1229, 14 L. Ed. 2d 106, reh. denied, 381 U.S. 957, 85 S. Ct. 1797, 14 L. Ed. 2d 730 (1965). In light of the entire charge and the specific instruction precluding the use of the defendant's failure to testify, there was no reasonable possibility that the jury perceived the instruction as a prejudicial comment on the defendant's failure to testify.

The judgment is affirmed.

In this opinion the other judges concurred.

that since there is clearly a reasonable doubt as to what my client did, that you must return a verdict of not guilty in this case.

"The evidence is not there. It just isn't there. There is no solid evidence against my client which [ties] him to *the burglary at 87 Norton Street on the first floor.* There is no direct evidence.

"There is no direct evidence that anyone saw him there. If they—they did have a fingerprint expert there. I guess that there were or are two things that bother me, bother me the most in this case.

"The first thing is that I would ask you to keep in mind that there were no fingerprints on this stuff and there was stuff that was never found.

"There were things taken *in this burglary,* all pocketable stuff such as watches and gold chains and . . . remote control parts, parts to a VCR and they were never located.

"You heard [the burglary victim] get up and say that she went crazy looking through her house, her hallways and her shrubs and she was upset and rightfully so . . . .

"So again, I don't really know who did *the burglary.* I don't know but I [am] going to outline a few possibilities for you just to show you that *somebody else did it."* (Emphasis added.)