### STATE OF CONNECTICUT v. CARLOS RIVERA HERNANDEZ
### (10167)

DUPONT, C. J., LAVERY and FREEDMAN, Js.

Argued April 29—decision released July 7, 1992

*Richard L. Zayas,* for the appellant (defendant).

*Rita M. Shair,* assistant state's attorney, with whom, on the brief, were *John Bailey,* state's attorney, *Paul Murray,* senior assistant state's attorney, and *Russell L. Case,* law student intern, for the appellee (state).

FREEDMAN, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of sale of narcotics by a person who is not drug-dependent in violation of General Statutes §§ 21a-278 (b) and 53a-8, and conspiracy to distribute narcotics in violation of

General Statutes §§ 21a-277 (a) and 53a-48. The defendant received a total effective sentence of seventeen years imprisonment. He claims that the trial court improperly (1) admitted into evidence statements of a nontestifying coconspirator, (2) denied his motion for judgment of acquittal, (3) denied his constitutional right to trial by a jury because of the brief duration of the jury deliberations, and (4) admitted into evidence the headrest of his car. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. Officer Wayne Rautenberg is a member of both the Manchester Police Department and the Tri-Town Narcotics Task Force. At approximately 5:15 p.m. on March 21, 1989, Rautenberg received a telephone call from Juan "Junior" Manso, who wanted to arrange a sale of cocaine to Rautenberg. Manso had received Rautenberg's telephone number, a special number at the police station used for undercover narcotics operations, from a police informant working with Rautenberg to arrange undercover drug buys. During the conversation, Manso told Rautenberg that he wanted to meet him at a certain Roy Rogers restaurant in Manchester. The restaurant was located close to Interstate 84 and adjoined a shopping center in which there was a Bonanza Restaurant.

Approximately thirty minutes later, Manso called Rautenberg a second time to advise him that he would be wearing a green and white baseball cap and a blue coat. Manso told Rautenberg that he would be in "the guy's" car. During this second telephone conversation, Manso repeatedly referred to "the guy" or "my guy." Rautenberg understood Manso's references to "the guy" to mean the owner of the cocaine. They finally agreed on a sale of two ounces of cocaine for $2200.

Rautenberg set out with a team of surveillance personnel to meet Manso and "the guy" at the designated location. He had $2200 in bills photographed for identification, and he was equipped with a transmitting device so that surveillance officers were able to hear and to see the drug transaction. Three officers in a van arrived first and parked in the Roy Rogers parking lot. Officer Joseph Morrissey arrived at the scene in a Honda Accord and parked across the street from Roy Rogers. Officer Earl Leighton was at a nearby gas station. Two other officers, Detective Michael Morrissey and Officer Paul Lombardo, watched from another unmarked vehicle beyond the gas station.

At approximately 6:25 p.m., a gray Nissan Maxima driven by the defendant exited the highway and circled the Roy Rogers parking lot. With the defendant were Manso and Sigfredo Diaz, who were looking all around as they drove through the parking lot. The defendant drove around the area, including nearby parking lots, and then returned to the Roy Rogers lot at which Rautenberg had arrived. Manso then got out of the defendant's car, walked over to Rautenberg and entered his car. Rautenberg showed Manso the cash and asked to see the cocaine. Manso told him that "the guy" did not want to complete the transaction in that lot. Because of the surveillance team, Rautenberg refused to move to another location.

Manso went back to the defendant's car and, following a brief conversation with the defendant, returned to Rautenberg's car. When Manso left the defendant's car, the defendant drove to the adjoining shopping center. He let Diaz out of the car in front of Bonanza, and then proceeded to drive in and out of a few parking spaces in the lot. Diaz walked back toward Manso and Rautenberg, looking intently inside all passing vehicles.

Meanwhile, Manso had reentered Rautenberg's car and handed him a bag containing a white substance in exchange for $2200. Tests conducted later indicated that the white substance was 90.8 percent cocaine. Rautenberg asked to meet "the guy" in the other car, but Manso told him that "the guy" did not want to meet him. Manso also told Rautenberg that if he wanted to do another transaction, he would have to work through Manso. Manso then left Rautenberg's car and walked back toward Bonanza. On the way he met Diaz. They appeared pleased, as they were slapping hands and conversing happily.

As soon as Manso and Diaz joined the defendant they were surrounded by the police. During a search of the defendant's car, the police found that the headrest on the driver's seat had a secret compartment.

The defendant first claims that the trial court improperly admitted the statements of Manso, who did not testify at trial, under the coconspirator exception to the hearsay rule. Specifically, he claims that there was insufficient evidence of a conspiracy to warrant the admission of Manso's statements as those of a coconspirator. The defendant, however, failed to object to the court's finding that the state had established a prima facie case of conspiracy to warrant the statements' admission. He also failed to object when the state elicited Manso's hearsay statements from Rautenberg. In order to obtain review of this claim, therefore, the defendant must satisfy the four-prong test for reviewability of unpreserved constitutionally based claims set forth in *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[1] The defendant can pre-

---

[1] The defendant also asks us, in the alternative, to review this claim under the plain error doctrine. Practice Book § 4185. The plain error doctrine, however, "is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings . . . and results in

vail only if the following four conditions are met: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." Id.

The defendant argues that the admission of the non-testifying coconspirator's statements violated his constitutional right to confront the witnesses against him as guaranteed by the sixth amendment to the United States constitution and article first, § 8, of the Connecticut constitution.[2] "[I]t is well established that a coconspirator's statement, made while the conspiracy is ongoing and in furtherance of the conspiracy, is an exception to the hearsay rule and as such, does not violate the confrontation clause. *State* v. *Spencer,* 198 Conn. 506, 513, 503 A.2d 1165 (1986); *State* v. *Vessichio,* 197 Conn. 644, 654–55, 500 A.2d 1311 (1985), cert. denied, 475 U.S. 1122, 106 S. Ct. 1642, 90 L. Ed. 2d 187 (1986)." *State* v. *Pelletier,* 209 Conn. 564, 577, 552 A.2d 805 (1989).

Here, the statements in question were those made by Manso to Rautenberg during the two telephone calls

an unreliable verdict or miscarriage of justice." (Citations omitted; internal quotation marks omitted.) *State* v. *Polanco,* 26 Conn. App. 33, 39, 597 A.2d 830, cert. denied, 220 Conn. 926, 598 A.2d 367 (1991). Because the defendant's claim fails to raise such an issue, plain error review is not warranted.

[2] Because the defendant has provided no separate analysis under his state constitutional claim, we need not consider it. *State* v. *Mooney,* 218 Conn. 85, 89 n.5, 588 A.2d 145, cert. denied, U.S. , 112 S. Ct. 330, 116 L. Ed. 2d 270 (1991). Our "declination, however, does not mean that we are not able to review [a state constitutional claim] if we choose to do so." *State* v. *Geisler,* 25 Conn. App. 282, 284 n.2, 594 A.2d 985 (1991), aff'd, 222 Conn. 672, 610 A.2d 1225 (1992).

preceding the drug transaction and the statements made to Rautenberg during the transaction. As such, it is clear that they were made during and in further-ance of the conspiracy. They were admitted as an exception to the hearsay rule and thus did not violate the defendant's confrontation rights. *State* v. *Pelletier,* supra, 578.

Because no constitutional right of the defendant was violated by the admission of Manso's statements under the coconspirator exception to the hearsay rule, and because the defendant failed to preserve a claim challenging the evidentiary ruling of the trial court, he is not entitled to review of this claim under *State* v. *Golding,* supra. The defendant has merely placed a con-stitutional tag on a nonconstitutional issue. *State* v. *Smith,* 219 Conn. 160, 165, 592 A.2d 382 (1991); *State* v. *Harvey,* 27 Conn. App. 171, 183, 605 A.2d 563 (1992).

The defendant next claims that the trial court improp-erly denied his motion for judgment of acquittal made at the close of the presentation of the evidence. He claims that there was insufficient evidence to send the case to the jury because all the state had proved was that he had driven the car in which Manso arrived at and departed from the scene.

" 'It is well established that in reviewing a claim of insufficient evidence, a two-part inquiry is undertaken. "We first review the evidence presented at the trial, construing it in the light most favorable to sustaining the jury's verdict. We then determine whether, upon the facts thus established and the inferences reason-ably drawn therefrom, the jury could reasonably have concluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt. . . . In this process of review, it does not diminish the proba-tive force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than

direct." (Citations omitted.) *State* v. *Sinclair,* 197 Conn. 574, 576, 500 A.2d 539 (1985). Findings of fact that are consistent with guilt are afforded great deference unless they are improbable and unconvincing. *State* v. *Osman,* 218 Conn. 432, 437, 589 A.2d 1227 (1991).' *State* v. *Gray,* 221 Conn. 713, 719–20, 607 A.2d 391 (1992)." *State* v. *Booker,* 28 Conn. App. 34, 42, 611 A.2d 878 (1992). Applying that standard to this case, we conclude that the jury could reasonably have concluded that the defendant was guilty of the crimes charged.

In the first count, the state charged the defendant with the crime of sale of narcotics by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b), which prohibits the sale or distribution of narcotics by a person who is not drug-dependent. Specifically, the trial court instructed the jury that it could convict the defendant if it found that he intentionally aided Manso in the sale of narcotics. General Statutes § 53a-8.[3]

The parties stipulated that the substance sold by Manso to Rautenberg was cocaine, a narcotic substance. The sole issue for the jury, therefore, was whether the defendant intended to sell cocaine to Rautenberg. There was more than enough direct and circumstantial evidence from which the jury could have concluded that the defendant was guilty. Manso told Rautenberg that he would arrive in "the guy's car," and arrived at the scene in the defendant's car. The surveillance team observed the defendant and his passengers looking about as they arrived in the Roy Rogers parking lot, a fact from which the jury could reasonably have inferred that they were looking for police.

---

[3] General Statutes § 53a-8 provides: "A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

When Rautenberg refused Manso's request to go to another location to complete the transaction, Manso returned to the defendant's car and then returned to Rautenberg to complete the transaction. From these actions, the jury reasonably could have inferred that Manso received the defendant's permission to complete the transaction. After Manso left the defendant's car the second time, the defendant drove across the street and dropped off Diaz at a location from which Diaz could observe the transaction and also be on the lookout for police. The defendant then continued into the parking lot, periodically moving from space to space. From these actions, the jury reasonably could have inferred that the defendant knew Manso was selling cocaine to Rautenberg, and that he and Diaz were on the lookout while Manso completed the transaction. Furthermore, Manso returned to the defendant's car immediately after completing the transaction with Rautenberg. We conclude that there was more than sufficient evidence from which the jury could have concluded, beyond a reasonable doubt, that the defendant was guilty of a violation of General Statutes § 21a-278 (b).

In the second count, the state charged the defendant with conspiracy to sell narcotics in violation of §§ 21a-277 and 53a-48.[4] "To establish the crime of conspiracy under § 53a-48 of the General Statutes, it must be shown that an agreement was made between two or more persons to engage in conduct constituting a crime and that the agreement was followed by an overt act in furtherance of the conspiracy by any one of the conspirators." (Internal quotation marks omitted.) *State* v. *Pinnock*, 220 Conn. 765, 771, 601 A.2d 521

---

[4] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

(1992). To prove the offense of conspiracy to sell narcotics, the state must prove two distinct elements of intent: that the conspirators intended to agree; and that they intended to sell narcotics to another person. "While the state must prove an agreement, the existence of a formal agreement between the conspirators need not be proved because [i]t is only in rare instances that conspiracy may be established by proof of an express agreement to unite to accomplish an unlawful purpose. . . ." (Internal quotation marks omitted.) Id., 772.

There was sufficient evidence to allow the jury to conclude that the state proved beyond a reasonable doubt that the defendant and Manso conspired to sell narcotics. From their actions, the jury could have concluded beyond a reasonable doubt that the two agreed and intended to sell narcotics to Rautenberg, and that Manso sold the cocaine to Rautenberg in furtherance of that agreement. Manso's repeated references to "the guy" and "my guy" indicated that Manso was conspiring with someone to sell cocaine, and from the evidence presented, the jury reasonably could have concluded that the defendant was "the guy" to whom Manso referred. Furthermore, Manso told Rautenberg that he would be in "the guy's car," and he arrived in the defendant's car. Manso returned to the defendant's car and had a conversation with the defendant after Rautenberg refused to go elsewhere to complete the transaction when Manso told him that "the guy" wanted to go elsewhere to complete the sale. After Manso's conversation with the defendant, he returned to Rautenberg and completed the sale.

The defendant's third claim is that he was effectively denied his constitutional right to a trial by jury because the jury deliberated only five to seven minutes before returning its guilty verdict. He claims that it was impos-

sible for the jury to have acted on the complicated issues of law and weak evidence presented in this case to reach a result in so short a time. This claim is without merit.

The right to a jury trial is guaranteed by the fifth and sixth amendments to the United States constitution and article first, § 19, of the Connecticut constitution. There is, however, no established rule of law requiring a jury to deliberate for any particular period of time. *United States* v. *Penagaricano-Soler,* 911 F.2d 833, 846 (1st Cir. 1990); *United States* v. *Anderson,* 561 F.2d 1301, 1303 (9th Cir. 1977) (per curiam), cert. denied, 434 U.S. 943, 98 S. Ct. 438, 54 L. Ed. 2d 304 (1977); *United States* v. *Brotherton,* 427 F.2d 1286, 1289 (8th Cir. 1970); *Wall* v. *United States,* 384 F.2d 758, 762 (10th Cir. 1967); *Kimes* v. *United States,* 242 F.2d 99, 100–101 (5th Cir.), cert. denied, 354 U.S. 912, 77 S. Ct. 1299, 1 L. Ed. 2d 1429 (1957). Ordinarily, in the absence of a claim of external influence or juror misconduct, a court will not inquire into a jury's deliberative process. *United States* v. *Sblendorio,* 830 F.2d 1382, 1389 (7th Cir. 1987). Here, the defendant makes no claim that the jury was influenced by some external influences. His claim is simply that the jury did not deliberate long enough. The length of time that a jury deliberates has no bearing on nor does it directly correlate to the strength or correctness of its conclusions or the validity of its verdict. In fact, the length of time of the jury's deliberations is a double-edged sword. A short deliberation, rather than being indicative of a lack of diligence, may in fact attest to the strength of the state's case. Absent a claim of external influence or juror misconduct, therefore, we will not interfere with the jury's verdict.

Finally, the defendant claims that the trial court improperly admitted into evidence the headrest with the secret compartment that had been attached to the driver's seat in the defendant's car. The defendant

argues that the headrest was irrelevant because nothing was found in the secret compartment, and that its prejudicial effect outweighed its probative value.

"Evidence is admissible when it tends to establish a fact in issue or to corroborate other direct evidence in the case. One fact is relevant to another fact whenever, according to the common course of events, the existence of the one, taken alone or in connection with other facts, renders the existence of the other either certain or more probable. Unless excluded by some rule or principle of law, any fact may be proved which logically tends to aid the trier in determination of the issue. . . . The trial court is given broad discretion in determining the relevancy of evidence and its decision will not be disturbed absent a clear abuse of that discretion." (Citations omitted; internal quotation marks omitted.) *State* v. *Holliman,* 214 Conn. 38, 50, 570 A.2d 680 (1990). "Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done. . . . The aggrieved party, therefore, assumes a heavy burden when seeking to reverse the exercise of judicial discretion." (Citations omitted; internal quotation marks omitted.) *State* v. *Tirado,* 194 Conn. 89, 95, 478 A.2d 606 (1984).

The headrest was relevant to the crimes charged because one of the investigating officers testified that it is common for drug dealers to hide narcotics in hidden compartments within a car to avoid their discovery if the occupants of the car are apprehended by law enforcement authorities. The fact that nothing was found in the compartment does not render the headrest irrelevant. "The possession by the defendant of a[n] . . . implement of crime is relevant even though there is no evidence that it was used in the commission of any particular crime, but there must be evidence that some crime was committed." 1 F. Wharton, Criminal Evidence (14th Ed.) § 151, p. 619.

The defendant also argues that its prejudicial effect outweighed its probative value. "There are situations where the potential prejudicial effect of relevant evidence would suggest its exclusion. These are: (1) where the facts offered may unduly arouse the jury's emotions, hostility or sympathy, (2) where the proof and answering evidence it provokes may create a side issue that will unduly distract the jury from the main issues, (3) where the evidence offered and the counterproof will consume an undue amount of time, and (4) where the defendant, having no reasonable ground to anticipate the evidence, is unfairly surprised and unprepared to meet it. McCormick, Evidence (2d Ed.) § 185, pp. 439–40." *State* v. *DeMatteo,* 186 Conn. 696, 702–703, 443 A.2d 915 (1982). None of these situations exists in this matter. The defendant merely makes a bald assertion that the headrest's admission was likely to arouse the jury's emotions of hostility against him by influencing the jury into believing that he is a drug dealer. We disagree. "Evidence that is inadmissibly prejudicial is not to be confused with evidence that is merely damaging. . . . All evidence adverse to a party is, to some degree prejudicial. To be excluded, the evidence must create prejudice that is undue and so great as to threaten injustice if the evidence were to be admitted." (Citations omitted.) *Chouinard* v. *Marjani,* 21 Conn. App. 572, 576, 575 A.2d 238 (1990).

The judgment is affirmed.

In this opinion the other judges concurred.