STATE OF CONNECTICUT *v.* DENNIS DICKERSON
(10373)

DUPONT, C. J., FOTI and LANDAU, Js.

Argued May 7—decision released July 21, 1992

*Paul Martin Tymniak,* with whom, on the brief, was *David A. Kollmann,* for the appellant (defendant).

*Richard F. Jacobson,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Steven Sedensky,* assistant state's attorney, for the appellee (state).

LANDAU, J. The defendant, Dennis Dickerson, was convicted by a jury of six of one count of assault in the first degree in violation of General Statutes § 53a-59 (a) (3). On appeal, he sets forth five claims, three involving the trial court instructions, one involv-

ing the trial court's denial of his motion for a mistrial, and, finally, one involving the sufficiency of the evidence. With respect to the trial court instructions, the defendant claims that the court improperly instructed the jury regarding (1) the reliability of prior inconsistent statements admitted for substantive purposes under *State* v. *Whelan,* 200 Conn. 743, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986), (2) adverse inferences and the defendant's failure to testify, and (3) consciousness of guilt. We disagree with all of the defendant's claims.

On the basis of the evidence presented at trial, the jury reasonably could have found the following facts. On the evening of December 3, 1988, while returning home from a nearby supermarket along Martin Luther King Drive in Father Panik Village in Bridgeport, Tavares Cosby was shot in the left foot. Shots were being fired from the area around building thirty toward the area across the street around building twenty-six. At the time of the shooting, the victim was on the sidewalk between buildings twenty-nine and thirty and the victim's companion, Raymond Lopez, who had just left the victim to return to his apartment in building twenty-six, was in the hallway of that building. After the shooting, Lopez flagged down his mother, Rosa Ortiz, who was driving toward their apartment. Ortiz drove the victim to the hospital where the large toe on his left foot was amputated.

At trial, the victim testified that he did not see who shot him, nor did he see the defendant at the time of the shooting, but that the shots came from the direction of building thirty. He also testified that he saw the defendant standing near the hallway of building thirty as he and Lopez walked by on their way to the supermarket. Lopez, who viewed the incident from the hallway of building twenty-six, and the victim's mother, Marcellina Cosby, who viewed the incident from the

window of her apartment in building twenty-nine, both gave sworn statements to the police indicating that the defendant shot the victim from the entranceway to building thirty.

## I

## A

### PRIOR INCONSISTENT STATEMENTS

At trial, the court admitted prior written inconsistent statements of Marcellina Cosby and Lopez for substantive purposes under *State* v. *Whelan,* supra. The defendant does not challenge the admissibility of these statements. Rather, he asserts that the trial court's instructions regarding the jury's consideration of the statements were improper. The defendant filed a request to charge in which he sought, in part, the following instruction: "In this case, the state of Connecticut has introduced two prior written inconsistent statements. I caution you that though these statements have been admitted for substantive purposes, there is no absolute guarantee of reliability." The trial court refused to give the requested charge, and, in the alternative, instructed the jury that it "can determine whether to believe the present testimony, the prior testimony or neither. Those statements are to be considered by you together with all of the evidence and you should give them such weight as they appear to be entitled to in view of all the circumstances under which they were made." The defendant argues that because his request to charge was "relevant to the issues of the case and [was] an accurate statement of the law"; *State* v. *Gabriel,* 192 Conn. 405, 418, 473 A.2d 300 (1984); the trial court was obligated to give it. We disagree.

"It is well established that when a proper request to charge is filed [pursuant to Practice Book § 852] and the trial court has failed to charge the jury in the exact

language of the request, the test is whether the court's instructions properly covered the substance of the written request." *State* v. *Watlington,* 216 Conn. 188, 198, 579 A.2d 490 (1990), citing *State* v. *Harrell,* 199 Conn. 255, 269, 506 A.2d 1041 (1986); *State* v. *Tillman,* 220 Conn. 487, 500, 600 A.2d 738 (1991). " 'A request to charge which is relevant to the issues of the case and which is an accurate statement of the law must be given. A refusal to charge in the exact words of a request will not constitute error if the requested charge is given in substance. *State* v. *Gabriel,* [supra]; *State* v. *Cooper,* 182 Conn. 207, 211, 438 A.2d 418 (1980).' *State* v. *Casey,* 201 Conn. 174, 178, 513 A.2d 1183 (1986). [Our Supreme Court] has often repeated that '[a] charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case.' *State* v. *Estep,* 186 Conn. 648, 651, 443 A.2d 483 (1982); *State* v. *Harris,* 172 Conn. 223, 226, 374 A.2d 203 (1977); *Amato* v. *Desenti,* 117 Conn. 612, 617, 169 A. 611 (1933)." *State* v. *Allen,* 216 Conn. 367, 386–87, 579 A.2d 1066 (1990); *State* v. *Jennings,* 216 Conn. 647, 663, 583 A.2d 915 (1990); *State* v. *Fernandez,* 27 Conn. App. 73, 87, 604 A.2d 1308 (1992); *State* v. *Toczko,* 23 Conn. App. 502, 507, 582 A.2d 769 (1990). It is the trial court's responsibility to instruct the jury in a manner calculated to give them a clear understanding of the issues presented for their consideration under the offenses charged and upon the evidence. See *State* v. *Watlington,* supra, 199; *State* v. *Harrell,* supra.

Our review of the defendant's claim requires that we examine the trial court's charge in its entirety to determine whether it is reasonably possible that the jury could have been misled by the instruction as it was given. See *State* v. *Ortiz,* 217 Conn. 648, 662, 588 A.2d

127 (1991); *State* v. *Allen,* supra, 387; *State* v. *Rollin-son,* 203 Conn. 641, 665, 526 A.2d 1283 (1987); *State* v. *Utz,* 201 Conn. 190, 209, 513 A.2d 1191 (1986); *State* v. *Shindell,* 195 Conn. 128, 143, 486 A.2d 637 (1985). " 'Whether a charge is possibly misleading depends on the substance rather than the form of what is said.' *State* v. *Stevenson,* 198 Conn. 560, 571, 504 A.2d 1029 (1986); see *State* v. *McMurray,* 217 Conn. 243, 253, 585 A.2d 677 (1991); *State* v. *Kurvin,* 186 Conn. 555, 565, 442 A.2d 1327 (1982)." *State* v. *Ortiz,* supra.

When the charge in the present case is viewed as a whole, it is clear that, although the trial court did not use the exact language of the defendant's request to charge, the substance of that request was included in the charge given by the court. The essence of the defendant's request to charge was to inform the jury that the prior statements were not inherently reliable and that it is not bound to accept them as fact. The instruction actually given by the trial court accurately conveyed the same theme to the jury. The instruction that the jury could consider the prior statement, the trial testimony or neither, depending on its view of the evidence as a whole and the circumstances under which the statements were made, clearly conveyed to the jury that it was free to determine independently the reliability of the past and present statements and that it was not bound to accept either one or the other as true.[1] It is, therefore, not reasonably possible that the jury was misled. See *State* v. *Ortiz,* supra; *State* v. *Dyson,* 217 Conn. 498, 501, 586 A.2d. 610 (1991).

[1] Moreover, the instruction given by the trial court clearly complies with *State* v. *Whelan,* 200 Conn. 743, 750, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986). In *Whelan,* our Supreme Court stated: " 'If, from all that the jury see of the witness, they conclude that what he says now is not the truth, but what he said before, they are none the less deciding from what they see and hear of that person and in court.' . . . The jury can, therefore, determine whether to believe the present testimony, the prior statement, or neither." (Citations omitted.) Id.

## B

### ADVERSE INFERENCE

The defendant next claims that the trial court's instruction that no adverse inference could be drawn from the defendant's failure to testify was insufficient. The following additional facts are necessary for our determination of this issue. Prior to instructing the jury, the trial court specifically informed defense counsel that it was going to instruct the jury regarding the defendant's failure to testify as follows: "You may draw no unfavorable inferences from the accused's failure to testify." See General Statutes § 54-84 (b).[2] Defense counsel asked if that was the entire portion of the charge that the court was going to give. The court responded in the affirmative. The defendant made no request for an additional instruction and the trial court instructed the jury in accordance with this conversation.

The defendant now claims that the court should have charged, in addition to the statutory language, that the defendant has an absolute right not to testify under the fifth amendment to the United States constitution. The defendant did not object to the instruction at trial and now seeks appellate review under *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973), and *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989). Both our Supreme Court and this court have reviewed similar claims in the absence of an objection raised properly at trial. See, e.g., *State* v. *Wright,* 197 Conn. 588, 594–95, 500 A.2d 547 (1985); *State* v. *Sinclair,* 197 Conn. 574, 582, 500 A.2d 539 (1985); *State* v. *Tatem,* 194 Conn. 594, 595, 483 A.2d 1087 (1984); *State* v. *Reid,*

---

[2] General Statutes § 54-84 (b) provides in pertinent part: "Unless the accused requests otherwise, the court shall instruct the jury that they may draw no unfavorable inferences from the accused's failure to testify. . . ."

22 Conn. App. 321, 326, 577 A.2d 1073, cert. denied, 216 Conn. 828, 582 A.2d 207 (1990). General Statutes § 54-84 (b) "serves to effectuate the fundamental constitutional right of a defendant not to testify in his criminal trial." *State* v. *Sinclair,* supra. The very nature of the no adverse inference instruction in this statute "is to dispel and ameliorate the inevitable speculation and to mitigate the damage to the defendant"; *State* v. *Tyson,* 23 Conn. App. 28, 43, 579 A.2d 1083 (1990); and "to reduce to a minimum any jury speculation as to why an accused would remain silent in the face of a criminal accusation." *State* v. *Smith,* 201 Conn. 659, 662–63, 519 A.2d 26 (1986).

"No judge can prevent jurors from speculating about why a defendant stands mute in the face of a criminal accusation, but a judge can and must . . . use the unique power of the jury instruction to reduce that speculation to a minimum." *Carter* v. *Kentucky,* 450 U.S. 288, 303, 101 S. Ct. 1112, 67 L. Ed. 2d 241 (1981). Our legislature has prescribed the language provided in General Statutes § 54-84 (b) to be the jury instruction that must be given to reduce speculation to a minimum. See *State* v. *Cobb,* 199 Conn. 322, 324, 507 A.2d 457 (1986). For this reason, we have regularly characterized as error any but the most minor departure from the language required by § 54-84 (b). *State* v. *Mebane,* 19 Conn. App. 618, 623–24, 536 A.2d 1026, cert. denied, 212 Conn. 817, 565 A.2d 538 (1989); *State* v. *Carpenter,* 19 Conn. App. 48, 55, 562 A.2d 35, cert. denied, 213 Conn. 804, 567 A.2d 834 (1989); *State* v. *Thurman,* 10 Conn. App. 302, 309, 523 A.2d 891, cert. denied, 204 Conn. 805, 528 A.2d 1152 (1987).

We conclude that the charge as given was appropriate. The trial court used the exact language of the statute. If the defendant felt that the trial court should have supplemented its instruction with the caveat that the defendant had a constitutional right not to testify, he

could have requested that the court so modify the charge. In light of the defendant's inaction, the trial court justifiably employed the language of § 54-84 (b). See *State* v. *Wright,* 197 Conn. 588, 594–95, 500 A.2d 547 (1985); *State* v. *Tyson,* supra, 44. The charge clearly informed the jury that it could not use the defendant's silence as a factor in its verdict. Moreover, as well as charging in the exact language of § 54-84 (b), the trial court also instructed the jury that no presumption of guilt could be drawn, that the defendant was presumed innocent, and that it was the state's burden to prove him guilty beyond a reasonable doubt. *State* v. *Jackson,* 23 Conn. App. 151, 156–57, 585 A.2d 694, cert. denied, 216 Conn. 823, 581 A.2d 1057 (1990). We cannot fault the trial court's adherence to the statutory mandate.

## C

### CONSCIOUSNESS OF GUILT

The defendant's final claim addressing the trial court's charge to the jury focuses on the court's instruction that a threat allegedly made by the defendant to the victim was relevant to show the defendant's consciousness of guilt. The victim testified that almost two years after the shooting the defendant had said to him that "if you go to court you're gonna . . . be doing more than limping." The court further instructed that consciousness of guilt "is *strong evidence* the person is *indeed guilty.*" (Emphasis added.) The defendant claims that the underscored language deprived him of his federal and state constitutional rights to a fair trial in that it implied to the jury that it should believe the accusation of the victim and that it shifted the burden to the defendant to refute the accusation. As with his first two claims of instructional error, the defendant failed to object to the instruction at trial and now seeks review under *State* v. *Evans,* supra, and *State* v. *Golding,* supra.

"It is well established that the test to be applied on appellate review to a claim of instructional error is whether the charge as a whole presented the case to the jury so that no injustice has been done. *State* v. *Lytell,* 206 Conn. 657, 664, 539 A.2d 133 (1988); *State* v. *Moss,* 189 Conn. 364, 370, 456 A.2d 274 (1983); *State* v. *Derrico,* 181 Conn. 151, 170, 434 A.2d 356, cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980)." *State* v. *Lamme,* 19 Conn. App. 594, 607, 563 A.2d 1372 (1989). An error in the charge requires reversal only if, in the context of the whole instruction, there is a reasonable possibility that the jury was misled in reaching its verdict. *State* v. *Anderson,* 212 Conn. 31, 38, 561 A.2d 897 (1989); *State* v. *Woods,* 23 Conn. App. 615, 623, 583 A.2d 639 (1990).

After reviewing the jury instruction in its entirety, we are satisfied that it was not reasonably possible that the use of the phrase "is *strong evidence* the person is *indeed guilty*" confused or misled the jury with regard to the state's heavy burden of proof so that justice was not served. *State* v. *Robinson,* 204 Conn. 207, 211, 527 A.2d 694 (1987); *State* v. *Mullings,* 202 Conn. 1, 14, 519 A.2d 58 (1987); *State* v. *Mason,* 186 Conn. 574, 585–86, 442 A.2d 1335 (1982); *State* v. *Haynes,* 25 Conn. App. 472, 595 A.2d 902 (1991); *State* v. *Lamme,* supra; *State* v. *Walker,* 9 Conn. App. 373, 376–77, 519 A.2d 83 (1986), cert. denied, 202 Conn. 805, 520 A.2d 1286 (1987). The defendant has failed to meet the third prong of *State* v. *Golding,* supra, because he cannot demonstrate that a constitutional violation "clearly exists and clearly deprived the defendant of a fair trial." Id., 239. This claim necessarily then must fail.

## II

The defendant's next claim is that the trial court should not have refused to grant his motion for a mis-

trial. The gravamen of this claim is that, because the jury foreperson had prior obligations outside of the state, the jury verdict was rushed, and the defendant was denied a fair trial. We disagree.

The following additional facts are necessary. On Thursday, May 2, 1991, the second day of testimony, one of the jurors[3] informed the court, by note, that he was in the process of two major acquisitions outside of the state that had to be completed by Friday, May 10, 1991. The court called the juror into court and indicated that it believed the trial could conclude by Tuesday, May 7, 1991. The court inquired if that would present a problem and the juror responded that if the trial went beyond Tuesday it would be a hardship. The trial court agreed to "monitor" the situation and review it before excusing the alternate jurors, if it appeared that the evidence would go beyond Tuesday.

The presentation of evidence was concluded on Monday, May 6, 1991. On May 7, 1991, counsel presented their closing arguments and the trial court instructed the jury. Prior to the commencement of the deliberation, the court inquired if the jurors were restricted by any personal schedules. There were no responses to the court's inquiry. At approximately 5 p.m., the jury requested a breakdown of the two counts of the information. The trial court had that portion of the charge read to the jury. The trial court indicated that it was its intention to dismiss the jurors after the reading and to have deliberation recommence in the morning. The jury, however, requested an additional ten minutes to continue its deliberations.

After ten minutes, the jury returned to the courtroom with a verdict. The first count presented to the jury for their verdict was the first count of the information,

---

[3] This juror was selected to act as the jury foreperson.

assault in the first degree in violation of General Statutes § 53a-59 (a) (1). In response to the court's request for a verdict on the first count of the information, the jury foreperson replied that the jury found the defendant not guilty of that offense. The next offense presented to the jury for its verdict was the first lesser included offense of the first count, attempted assault in the first degree in violation of §§ 53a-59 (a) (1) and 53a-49 (a) (2). The jury foreperson indicated that the jury found the defendant guilty of the first lesser included offense, which was the second offense presented to the jury for its consideration. The court then began to poll the jurors individually as to the guilty verdict.

At this point, the foreperson asked if the court had read the charges of the first and second count separately, to which the court responded that it read the first count and then the first lesser included offense of that count. The foreperson then requested that the jury be granted permission to amend its verdict. The court granted the request and ordered the jury to return to the deliberation room. Prior to leaving the courtroom, the foreperson passed a sheet of paper to the clerk on which was written "2nd Count Guilty of Reckless Abandon." The jury returned to the deliberation room and defense counsel sought a mistrial on the ground that the jury was "rushing to judgment." The motion was denied.

The jury's actions in the courtroom were due to the order in which the trial court presented the counts of the information and the lesser included offenses to the jury for its verdict. It is apparent that the jury was under the impression that the trial court was going to request verdicts on the two charged offenses first and then, if necessary, proceed to the lesser included offenses. By responding that the defendant was guilty of the second count presented for its verdict, the jury

believed that it was convicting the defendant of the second count of the information, not of the first lesser included offense of the first count of the information.

Upon the jury's return to the courtroom, the court indicated to the jury the order in which it was going to present the counts of the information and the lesser included offenses for it to render its verdict. The jury found the defendant not guilty of the first count, assault in the first degree,[4] and not guilty of the lesser included offenses of attempted assault in the first degree,[5] assault in the second degree,[6] and attempted assault in the second degree,[7] but guilty of the second count of the information, assault in the first degree in violation of General Statutes § 53a-59 (a) (3). The jurors were polled individually as to the verdict on the second count of the information and the verdict was accepted by the court.

In our review of the denial of a motion for mistrial, we have recognized the broad discretion that is vested in the trial court to decide whether an occurrence at trial has so prejudiced a party that he or she can no longer receive a fair trial. *State* v. *Famiglietti,* 219 Conn. 605, 616, 595 A.2d 306 (1991); *Speed* v. *DeLibero,* 215 Conn. 308, 315, 575 A.2d 1021 (1990); *State* v. *Nowakowski,* 188 Conn. 620, 624, 452 A.2d 938 (1982). Given the fact that the trial judge is not simply a referee presiding over a forensic contest, but is a minister of justice, he is, for that purpose, vested with the authority to exercise reasonable discretion in the conduct of a trial. *State* v. *Lucci,* 25 Conn. App. 334, 341–42, 595 A.2d 361, cert. denied, 220 Conn. 913, 597 A.2d 336 (1991). The decision of the trial court is there-

---

[4] General Statutes § 53a-59 (a) (1).

[5] General Statutes §§ 53a-59 (a) (1) and 53a-49 (a) (2).

[6] General Statutes § 53a-60 (a) (2).

[7] General Statutes §§ 53a-60 (a) (2) and 53a-49 (a) (2).

fore reversible on appeal only if there has been an abuse of discretion. *State* v. *Marra,* 215 Conn. 716, 732, 579 A.2d 9 (1990); *State* v. *Cruz,* 212 Conn. 351, 364, 562 A.2d 1071 (1989); *State* v. *Rodriguez,* 210 Conn. 315, 326, 554 A.2d 1080 (1989); *State* v. *Fleming,* 198 Conn. 255, 264, 502 A.2d 886, cert. denied, 475 U.S. 1143, 106 S. Ct. 1797, 90 L. Ed. 2d 342 (1986); *State* v. *Harvey,* 27 Conn. App. 171, 177–78, 605 A.2d 563 (1992).

In our view, the trial court did not abuse its discretion by denying the defendant's motion for a mistrial. Other than the initial remarks by the jury foreperson, the record is devoid of any evidence that the verdict was rushed. It is apparent from our review of the record that jury deliberation was undertaken with the appropriate level of seriousness and responsibility. There has been no showing that the jurors failed to review the case thoroughly during the course of their deliberations. See *State* v. *Castonguay,* 194 Conn. 416, 436, 481 A.2d 56 (1984). Moreover, the jury's request to amend its initial verdict of guilty of the first lesser included offense of the first count of the information, indicates its awareness of the differences between the specific counts of the information and the lesser included offenses and its willingness to take the time to rectify any errors. The defendant directs us to no evidence indicating that he was so prejudiced that he can no longer receive a fair trial. We, therefore, conclude that the trial court correctly denied the defendant's motion for mistrial.[8]

---

[8] Many cases have upheld verdicts even though the jury deliberated for a relatively short time before reaching its verdict. *State* v. *Hernandez,* 28 Conn. App. 126, 612 A.2d 88 (1992) (five to seven minutes—sale of narcotics and conspiracy to distribute narcotics); *United States* v. *Brotherton,* 427 F.2d 1286 (8th Cir. 1970) (five to seven minutes—transporting a stolen vehicle in interstate commerce); *State* v. *Burrell,* 106 Ariz. 100, 471 P.2d 712 (1970) (forty minutes—convicted of three counts of robbery and escape and acquitted of three counts of kidnapping guards); *State* v. *Ware,* 338 N.W.2d 707 (Iowa 1983) (one and one-half hours—first degree murder and

## III

The defendant's final claim is that the evidence presented at trial was insufficient to sustain his conviction. We disagree.

We employ "a two-part analysis in appellate review of the sufficiency of the evidence to sustain a criminal conviction. . . . We first review the evidence presented at trial, construing it in the light most favorable to sustaining the facts expressly found by the trial court or impliedly found by the jury. . . . We then decide whether, upon the facts thus established and the inferences reasonably drawn therefrom, the jury could reasonably have concluded that the cumulative effect of the evidence established the defendant's guilt beyond a reasonable doubt." (Citations omitted; internal quotation marks omitted.) *State* v. *Johnson,* 26 Conn. App. 433, 435, 602 A.2d 36, cert. denied, 221 Conn. 916, 603 A.2d 747 (1992).

In order to convict the defendant of assault in the first degree in violation of General Statutes § 53a-59 (a) (3), the state was required to prove beyond a reasonable doubt that "under circumstances evincing an extreme indifference to human life [the defend-

first degree robbery); *State* v. *Chadwick,* 328 N.W.2d 913 (Iowa 1983) (one hour and twenty-nine minutes—first degree murder); *State* v. *Inman,* 350 A.2d 582 (Me. 1976) (forty minutes—felonious homicide); *State* v. *Gibbs,* 600 S.W.2d 594 (Mo. App. 1980) (seven minutes—carrying a concealed weapon and possession of marihuana); *State* v. *Spangler,* 314 N.C. 374, 333 S.E.2d 722 (1985) (fifteen minutes—first degree murder); *State* v. *Caldwell,* 656 S.W.2d 894 (Ten. Cr. App. 1983) (twenty-six minutes—first degree murder); *Anglin* v. *State,* 553 S.W.2d 616 (Tenn. Cr. App. 1977) (ten minutes—aiding and abetting assault with intent to commit robbery); *Wheeler* v. *State,* 539 S.W.2d 812 (Tenn. Cr. App. 1976) (eleven minutes—armed robbery); *State* v. *Bell,* 582 S.W.2d 800 (Tex. Cr. App. 1979) (one hour—capital murder); *State* v. *Killary,* 133 Vt. 604, 349 A.2d 216 (1975) (forty-seven minutes—first degree murder); see also Annot. Criminal Case—Reaching Verdict—Haste, 91 A.L.R.2d 1238.

ant] recklessly engage[d] in conduct which create[d] a risk of death to another person, and thereby cause[d] serious physical injury to another person." *State* v. *Jupin,* 26 Conn. App. 331, 340, 602 A.2d 12, cert. denied, 221 Conn. 914, 603 A.2d 404 (1992). The defendant does not dispute the fact that the victim suffered a serious physical injury. Rather, he disavows responsibility for the injury sustained.

The jury's verdict is amply supported by the record. The victim testified that although he did not see anyone firing a gun from building thirty, he heard shots being fired from that area, that he had seen the defendant standing in the hallway of building thirty only a short while earlier and that in November, 1990, after the defendant had been formally charged with having assaulted the victim, the defendant threatened the victim, indicating that if he testified in court he would be doing a lot more than limping. The jury had before it the sworn, written statement of Marcellina Cosby, introduced for substantive purposes under *State* v. *Whelan,* supra, in which she stated that, from an approximate distance of twenty-five feet, she saw the defendant fire a long black gun, which he had hidden under a three-quarter length coat, across the street at two Hispanic males and that his gunfire hit her son. She further indicated that the defendant was the only person shooting from the direction from which the bullet came. The jury also had before it the sworn, written statement of Raymond Lopez, admitted for substantive purposes under *State* v. *Whelan,* supra, in which he stated that he saw the defendant, standing alone, shoot the victim. Moreover, while giving their statements at the police station, Cosby and Lopez were asked to identify the victim's assailant. They both selected the defendant's photograph from an array of seven black and white photographs of young black males.

On the basis of these facts, we conclude that there was sufficient evidence from which the jury reasonably could conclude that the victim was shot by the defendant while the defendant was recklessly firing a gun toward individuals across the street.

The judgment is affirmed.

In this opinion the other judges concurred.