STATE OF CONNECTICUT *v.* DANIEL SOLOMON
(AC 27716)

Flynn, C. J., and McLachlan and Lavine, Js.

---

Argued May 31—officially released September 4, 2007

*Christopher M. Neary*, special public defender, for the appellant (defendant).

*Jessica Probolus*, special deputy assistant state's attorney, with whom, on the brief, were *Michael L. Regan*, state's attorney, and *David J. Smith*, assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, C. J. The defendant, Daniel Solomon, appeals from the judgment of conviction, rendered after a jury trial, of assault in the third degree, unlawful restraint in the second degree and interfering with an emergency call in violation of General Statutes §§ 53a-61 (a) (1), 53a-96 and 53a-183b, respectively. On appeal, the defendant claims that (1) the trial court improperly failed to instruct the jury on the theory of self-defense, on the process of weighing the credibility of a convicted felon and on one of the necessary elements of the charge of interfering with an emergency call, (2) the court improperly denied a motion for a judgment of acquittal on the charge of interfering with an emergency call and (3) the prosecutor made improper remarks during the closing arguments that prejudiced the defendant. We affirm the judgment of the trial court.

The following facts and procedural history are necessary for our disposition of the defendant's appeal. At approximately 3 a.m. on November 24, 2005, three Norwich police officers responded to the home of the defendant and his wife, the complainant in this case, after a neighbor reported hearing a fight inside the home. When the police arrived, the home was quiet, and no one initially responded to a knock on the door. Then the responding police officers heard a woman inside yell, "let me go, let me answer the door." The complainant came to the door after the police threatened to "kick the door in." Upon interviewing the complainant, the police noticed fresh scratches on her neck. When the police interviewed the defendant, he claimed that nothing had happened that night. The defendant was

arrested and charged with assault in the third degree, unlawful restraint in the second degree and interfering with an emergency call. At trial, both the defendant and the complainant testified that the meal that was being prepared had started to burn, causing the smoke alarm to go off. They also testified that an argument had ensued but differed in their testimony on the details of the argument. The defendant was convicted and sentenced to one year to serve on each count, to run concurrently. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court improperly failed to instruct the jury on a theory of self-defense, on the process for assessing the credibility of a convicted felon and on one of the elements of the interfering with an emergency call charge, specifically, that the victim was seeking protection or trying to report a crime. We disagree with each of these claims.

The defendant acknowledges that this series of claims was not preserved at trial and requests that we apply *Golding* review. See *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). Under *Golding*, a defendant can obtain review of an unpreserved claim "only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.) Id. "The first two steps in the *Golding* analysis address the reviewability of the claim,

whereas the last two steps address the merits of the claim." *State* v. *Cohens*, 62 Conn. App. 345, 350, 773 A.2d 363, cert. denied, 256 Conn. 918, 774 A.2d 139 (2001).

The following additional facts are relevant to the defendant's claims. The complainant testified that after the smoke alarm went off in the kitchen, she opened the door to ventilate the smoke and then an argument between her and the defendant began. According to her testimony, the fight escalated when she tried to leave the apartment, and the defendant physically blocked her exit. The complainant told police that when she tried to leave the apartment, the defendant grabbed her and pulled her back in; as a result, the complainant attempted to call 911 to get the defendant out of the apartment. She claimed that the defendant grabbed her by the throat and caused the scratches on her neck. The complainant also acknowledged in her testimony that she is a convicted felon.

The defendant testified that on the morning of November 24, 2005, he fought with the complainant before the smoke alarm went off. The defendant testified that the fight was initiated by the complainant. The defendant claimed that the complainant was intoxicated. According to the defendant, the argument became physical when the complainant threw a large bottle of wine at him and tried to hit him with a broken chair leg. Neither hit the defendant. He testified that he grabbed the chair leg and held the complainant to keep her from attacking him. The defendant was adamant both on direct and cross-examination that he never struck her, slapped her, scratched her or pushed her. He testified that the complainant came after him with her hands, striking him in four places after he took the broken chair leg away from her. At this point, the complainant wanted the defendant to leave. The testimony of the defendant was that the argument dissolved, and the couple then focused on the smoke alarm going

off in the apartment. We consider each of the defendant's claimed instructional improprieties in turn.

## A

The defendant claims that it was the duty of the court sua sponte to charge the jury on self-defense because there was evidence adduced at trial to support such a charge.[1] The state argues that this claim does not implicate a constitutional right and, therefore, is not reviewable. We agree that a constitutional right has not been implicated. See *State* v. *Lemoine*, 256 Conn. 193, 199, 770 A.2d 491 (2001).

To implicate a constitutional right, the defendant had to assert a claim of self-defense and present evidence to warrant a jury instruction on the defense. He did neither. A defendant who asserts a self-defense claim for which there is evidence produced at trial to justify the instruction is entitled to a self-defense instruction, no matter how weak or incredible the claim. See *State* v. *Williams*, 258 Conn. 1, 8, 778 A.2d 186 (2001). Our Supreme Court, however, has stated that the trial court does not have a constitutional duty to instruct on a defense sua sponte except in very limited circumstances generally involving affirmative defenses. See *State* v. *Preyer*, 198 Conn. 190, 197 n.9, 502 A.2d 858

---

[1] Contrary to the defendant's claim on appeal, he did not claim self-defense or provide evidence that he acted in self-defense at trial. Rather, he specifically testified, in relation to the complainant: "Never did I strike her. Never did I slap her, never did I push her, nothing of the sort." He did testify, however, that he "may have" grabbed the complainant around the neck when she attacked him, but that never injured her. It appears, therefore, that the theory of defense at trial was more closely related to accident or unintended consequences rather than self-defense. A theory of self-defense and a claim of accident or unintended consequences are inconsistent. See *State* v. *Schultz*, 100 Conn. App. 709, 717, 921 A.2d 595, cert. denied, 282 Conn. 926, 926 A.2d 668 (2007). The defense of accident is unlike self-defense because whereas self-defense presumes an intentional but justified act, accident presumes that any injury was unintended. Id.

(1985). Here, the defendant never requested an instruction on self-defense pursuant to Practice Book §§ 42-16 through 42-18, nor did he present any evidence to warrant an instruction on such a defense had he requested one. Accordingly, this claim is not of constitutional magnitude, and we decline to afford it further review.

B

The defendant next claims that the court improperly failed to instruct the jury on the process for assessing the credibility of a convicted felon. The defendant did not preserve this claim by filing a request to charge concerning how the testimony of felons might be weighed, nor did he object to the court's charge as given. The state asserts that this claim is not of constitutional magnitude and, therefore, is not reviewable. We agree with the state.

Although the record is adequate for review, matters of general credibility in jury instructions merely are evidentiary in nature and do not rise to a level of constitutional magnitude. See *State* v. *Patterson*, 276 Conn. 452, 471, 886 A.2d 777 (2005); *State* v. *Dash*, 242 Conn. 143, 152, 698 A.2d 297 (1997); *State* v. *Walton*, 227 Conn. 32, 65, 630 A.2d 990 (1993); *State* v. *Tatum*, 219 Conn. 721, 738, 595 A.2d 322 (1991). Because the defendant's claim implicates only general principles of credibility, we decline to afford it review.

C

The defendant's final claim of alleged instructional impropriety concerns the jury charge on interfering with an emergency call in violation of § 53a-183b. Specifically, he claims that the court never charged the jury that, in order to find the defendant guilty, it must find beyond a reasonable doubt that the victim was trying to report a crime or seek protection. The state argues

that the defendant cannot prevail because the court instructed the jury on every element of the crime and closely tracked the language of the statute. Although we agree with the defendant that the record is adequate for review and that his claim is of constitutional magnitude, we conclude that this claim fails under the third prong of *Golding* because the defendant has not shown that a constitutional violation clearly exists.

Initially, we must determine whether the court's instructions "gave the jury a reasonably clear comprehension of the issues presented for [its] determination under the pleadings and upon the evidence and were suited to guide [it] in the determination of those issues." (Internal quotation marks omitted.) *State* v. *Gooden*, 89 Conn. App. 307, 313, 873 A.2d 243, cert. denied, 275 Conn. 918, 919, 883 A.2d 1249 (2005). "Our focus is on the substance of the charge rather than the form of what was said not only in light of the entire charge, but also within the context of the entire trial. . . . [A]s to unpreserved claims of constitutional error in jury instructions, we have stated that under the third prong of *Golding*, [a] defendant may prevail . . . only if . . . it is reasonably possible that the jury was misled . . . ." (Internal quotation marks omitted.) *State* v. *Collins*, 100 Conn. App. 833, 843, 919 A.2d 1087 (2007).

General Statutes § 53a-183b (a) provides that "[a] person is guilty of interfering with an emergency call when such person, with the intent of preventing another person from making or completing a 9-1-1 telephone call or a telephone call or radio communication to any law enforcement agency to request police protection or report the commission of a crime, physically or verbally prevents or hinders such other person from making or completing such telephone call or radio communication."

The necessary elements of this crime, which the state was required to prove beyond a reasonable doubt, therefore, were that the defendant (1) acting with the intent to prevent another person from (a) making or completing a 911 telephone call to request police protection or to report the commission of a crime, or (b) making or completing a telephone or radio communication to any law enforcement agency to request police protection or to report the commission of a crime; (2) when that other person was seeking police protection or to report the commission of a crime; and (3) physically or verbally prevented or hindered that other person from making such telephone call or radio communication. General Statutes § 53a-183b. It is the charge related to the second element that the defendant claims is insufficient. We disagree.

On the charge of interfering with an emergency call, the court charged in relevant part: "For you to find the defendant guilty of this charge, the state must have proven beyond a reasonable doubt that the defendant intentionally prevented or stopped the alleged victim from placing a 911 call to the police *to request police protection and/or report commission of a crime.*" (Emphasis added.) Clearly, the court charged on the second element of the offense. We therefore conclude that the defendant's claim lacks merit.

## II

The defendant next claims that the court improperly refused to render a judgment of acquittal on the charge of interfering with an emergency call. The defendant acknowledges that the record is unclear as to whether he actually made an oral motion for a judgment of acquittal, but he argues that the court understood the "gist" of what he was seeking. Our review of the record reveals that what the defendant argues was an oral motion to acquit, instead, was an objection to a charge

for which he claimed there was no evidence. Regardless, the defendant now claims that there was insufficient evidence to show that the complainant was trying to "request police protection or report the commission of a crime," which is a necessary element for conviction under § 53a-183b. The state argues that there was ample evidence adduced at trial to prove this element of the crime. We agree with the state.

To begin, we set forth our standard of review. "In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [trier of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Miranda*, 260 Conn. 93, 110, 794 A.2d 506, cert. denied, 537 U.S. 902, 123 S. Ct. 224, 154 L. Ed. 2d 175 (2002). "[I]n viewing evidence which could yield contrary inferences, the jury is not barred from drawing those inferences consistent with guilt and is not required to draw only those inferences consistent with innocence. The rule is that the jury's function is to draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Internal quotation marks omitted.) *State* v. *Brown*, 235 Conn. 502, 510–11, 668 A.2d 1288 (1995).

The defendant claims that the court should not have instructed the jury on the charge of interfering with an emergency call because there was no evidence that the complainant attempted to make a call to report a crime or to seek police protection. The following additional facts are relevant to this issue.

The complainant testified that she attempted to telephone the police during the fight with the defendant

but that the defendant kept blocking her from the telephone. When asked at trial why she was attempting to telephone the police, the complainant stated that she wanted the defendant out. Although the defendant argues that this testimony was insufficient to prove the second element of the charge of interfering with an emergency call, i.e., that the complainant was seeking police protection or to report the commission of a crime, we conclude that the jury reasonably could have made such an inference. Furthermore, in addition to the testimony of the complainant, Carl Dye, one of the responding police officers, testified, without objection, that the complainant had told him that "she tried leaving and [the defendant had] grabbed her and yanked her back inside. She tried pulling away. She then tried to get to the telephone to call 911, [but the defendant] took the [telephone] from her and then picked up the cell—a cell phone, and said, you're not calling anybody." Dye's testimony together with other evidence in the case, including the complainant's testimony, reasonably could have led the jury to conclude beyond a reasonable doubt that the complainant was trying to make a 911 call in order to request police protection or to report the commission of a crime. Therefore, the defendant's claim fails.

## III

The defendant's final claim on appeal is that he was deprived of a fair trial because of prosecutorial impropriety during closing argument. Specifically, the defendant claims that the prosecutor improperly tried to sway the emotions of the jury by characterizing the case as being one of domestic violence and by offering his personal opinion on the state of mind of the defendant. We are not persuaded.

The defendant failed to object to the claimed improper comments at trial and, therefore, did not preserve his claim. However, this failure does not bar this

court's review. "In examining claims of prosecutorial [impropriety], we engage in a two step analytical process. The two steps are separate and distinct: (1) whether [impropriety] occurred in the first instance; and [if so] (2) whether that [impropriety] deprived a defendant of his due process right to a fair trial." (Internal quotation marks omitted.) *State* v. *Camacho*, 282 Conn. 328, 367, 924 A.2d 99 (2007); *State* v. *George J.*, 280 Conn. 551, 604, 910 A.2d 931 (2006), cert. denied, 549 U.S. 1326, 127 S. Ct. 1919, 167 L. Ed. 2d 573 (2007). We review each category of claimed impropriety in turn to determine whether, in fact, the prosecutor made improper comments.

A

The defendant claims that the prosecutor acted improperly by making references to domestic violence during closing argument. Specifically, he argues that "[t]here was never any mention of the words 'domestic violence' during the course of the trial, the presentation of evidence or police investigation. . . . By referring not only to this case as one of domestic violence but also referring to the generalizations about domestic violence, the state unfairly attempted to sway the emotions of the jury by characterizing the alleged crimes under a label that had not been raised and by appealing to the [jurors'] compassion for general victims of domestic violence." We find this argument entirely lacking in merit.[2]

The following additional facts are relevant to our conclusion. During the presentation of witnesses, the term "domestic violence" was used only once, when the prosecutor asked Officer Dye whether "when you make an arrest and an incident, specifically, of domestic

---

[2] The defendant does not provide separate analysis of his argument as it relates to "generalizations about domestic violence." Accordingly, we do not consider it to be a separate claim, and we do not analyze it separately.

violence occurs, do you know whether alcohol was involved in the incident?" No objection was raised to this question. During closing argument, the term "domestic violence" was used twice by the prosecutor. First, immediately after defense counsel argued to the jury that it should compare the demeanor of the defendant with that of the complainant and that the whole case came down to what the complainant said versus what the defendant said, the prosecutor began his closing argument: "Unfortunately, following the line of logic of the defense, nearly all domestic violence cases wouldn't be able to be prosecuted because you would only have, and which is the nature of domestic violence cases, the alleged victim in the case and the perpetrator of the case." Shortly thereafter, the prosecutor also stated: "Now, to go beyond what the defense says, it's really not just she said, he said, which is the case in most domestic violence incidents." The defendant voiced no objection to these statements at trial. Additionally, although the defendant argues that "[t]here was never any mention of the words 'domestic violence' " save for these, a thorough review of the record reveals that this is not the case. Specifically, during jury voir dire, defense counsel told every juror who was chosen to sit, with the exception of one, for whom counsel had no questions or comments, that this case: "might be termed of a domestic violence nature"; "might be termed domestic violence in nature"; "might be referred to as domestic violence in nature"; "might be termed domestic violence"; "might be termed domestic violence" and "might be termed domestic abuse," respectively.[3]

---

[3] We note that a criminal trial generally is said to begin with the voir dire of prospective jurors. See, e.g., *State* v. *Wilson F.*, 77 Conn. App. 405, 411–12, 823 A.2d 406 (for purposes of Practice Book §§ 36-17 and 36-18, criminal trial begins with voir dire of prospective jurors), cert. denied, 265 Conn. 905, 831 A.2d 254 (2003); *State* v. *Lacks*, 58 Conn. App. 412, 416, 755 A.2d 254 (for purposes of speedy trial rules, jury trial begins with voir dire examination), cert. denied, 254 Conn. 919, 759 A.2d 1026 (2000).

We conclude that counsel for both sides were not incorrect in considering this a case of domestic violence. It sometimes has been observed that present day English owes more to the Romans and French than it does to the Angles, Saxons and Jutes. The word domestic is rooted in Latin, like so many words in the English language. It comes from the Latin word domus, which means house. American Heritage Dictionary of the English Language (New College Ed. 1981). The definition of domestic is "of or pertaining to the family or household." Id. Black's Law Dictionary (7th Ed. 1999) defines "domestic violence" as "[v]iolence between members of a household, usu. spouses; an assault or other violent act committed by one member of a household against another." Clearly, the term fits with the evidence in this case, and it was not improper for either counsel to use it.

### B

The defendant next claims that the prosecutor improperly offered his personal opinion of the defendant's state of mind. We disagree.

We begin by setting out the standard we will use to determine if the statement was improper. Rule 3.4 (5) of the Rules of Professional Conduct states in pertinent part that "[a] lawyer shall not . . . [i]n trial . . . state a personal opinion as to the justness of a cause, the credibility of a witness . . . or the guilt or innocence of an accused." Despite the rule, however, our Supreme Court has indicated that such personal expressions are not always barred. See *State* v. *Colon*, 272 Conn. 106, 248–49, 864 A.2d 666 (2004), cert. denied, 546 U.S. 848, 126 S. Ct. 102, 163 L. Ed. 2d 116 (2005). "Although prosecutors generally should try to avoid using phrases that begin with the pronoun 'I,' such as 'I think' or 'I believe,' [our Supreme Court has] recogniz[ed] that the use of the word 'I' is part of our everyday parlance and

. . . because of established speech patterns, it cannot always easily be eliminated completely from extemporaneous elocution. . . . Therefore, if it is clear that the prosecutor is arguing from the evidence presented at trial, instead of giving improper unsworn testimony with the suggestion of secret knowledge, his or her occasional use of the first person does not constitute misconduct." (Citations omitted.) *State* v. *Luster*, 279 Conn. 414, 436, 902 A.2d 636 (2006).

The defendant takes issue with the following remark of the prosecutor: "I think it's clear here he intended to keep her from leaving the apartment when he grabbed her around the neck and caused [the] injuries, and he intended to not let her make the phone call when he kept the phone away from her. So, that would satisfy the intent element." A review of the transcript reveals that the prosecutor's comment was made in the context of a discussion of intent that came after an explanation of the state's evidence. The comment was related to the evidence that the prosecutor was permitted to use in order to make suggestions as to the inferences that could be made from that evidence. We conclude, therefore, that this comment by the prosecutor was not improper. Because we conclude that there was no prosecutorial impropriety in closing argument, there is no need to undertake a due process analysis.

The judgment is affirmed.

In this opinion the other judges concurred.