### STATE OF CONNECTICUT *v.* DAVID J. WILSON
### (AC 29857)

Lavine, Robinson and Pellegrino, Js.

Argued October 14—officially released December 22, 2009

*Russell Fuller*, for the appellant (defendant).

*Mitchell S. Brody*, senior assistant state's attorney, with whom, on the brief, were *Patricia M. Froehlich*, state's attorney, and *Bonnie R. Bentley*, assistant state's attorney, for the appellee (state).

*Opinion*

PELLEGRINO, J. The defendant, David J. Wilson, appeals from the judgment of conviction, rendered following a court trial, of operating a motor vehicle while

under the influence of intoxicating liquor or drugs in violation of General Statutes § 14-227a (a) (1)[1] and recklessly operating a motor vehicle on a public highway in violation of General Statutes § 14-222 (a).[2] The defendant thereafter pleaded guilty pursuant to § 14–227a (g) of previously having twice been convicted of operating a motor vehicle while under the influence of intoxicating liquor or drugs. The defendant subsequently was sentenced to three years of incarceration, execution suspended after one year, and three years of probation. On appeal, the defendant argues that the evidence at trial was insufficient to support his conviction. The defendant contends that the evidence supported the theory that his intoxication was the result of involuntary inhalation of kerosene fumes after a five gallon container of kerosene spilled in the back of his work van. We reject this claim and affirm the judgment of the trial court.

The court reasonably could have found the following facts. On June 15, 2006, at approximately 4 p.m., Joseph Santamaria, a former New Britain patrol officer for twenty-six years, was driving his motorcycle along Route 44 in the town of Pomfret on a sunny day. Santamaria's eleven year old son was seated behind him on the motorcycle. Santamaria brought his motorcycle

---

[1] General Statutes § 14–227a (a) provides in relevant part: "No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if such person operates a motor vehicle (1) while under the influence of intoxicating liquor or any drug or both . . . ."

[2] General Statutes § 14–222 (a) provides in relevant part: "No person shall operate any motor vehicle upon any public highway of the state . . . recklessly, having regard to the width, traffic and use of such highway, road, school property or parking area, the intersection of streets and the weather conditions. . . . The operation of a motor vehicle . . . at such a rate of speed as to endanger the life of any person other than the operator of such motor vehicle . . . shall constitute a violation of the provisions of this section. . . ."

to a stop at a traffic signal that had been temporarily installed as a result of bridge construction that had reduced the road to a single lane. While stopped at the signal, Santamaria's motorcycle was struck from behind by a van driven by the defendant. The impact caused the motorcycle to lunge forward several feet and left the grill and hood of the van wedged between the motorcycle's tire and frame. Neither occupant of the motorcycle was seriously injured.

The defendant testified that he was driving from Manchester to his job in Brooklyn on the day of the incident. He had been assisting a contractor in laying a foundation in Brooklyn. The defendant contends that a five gallon container of kerosene needed for his work and carried in the back of his van had spilled the night before and that kerosene had gotten trapped under the rubber matting on the floor of the van. He testified that fumes from the kerosene caused his erratic behavior.

Immediately after the accident, Santamaria approached the driver's side window of the van and asked the defendant what had happened. Santamaria observed that the defendant's eyes appeared "a little squinty" and that when the two spoke, the defendant's answers were slow and nonresponsive. Santamaria subsequently telephoned the police, and, five to ten minutes later, state police Trooper Robert Scavello arrived on the scene.

According to Scavello, the defendant had a blank stare, appeared disoriented and "seemed like he didn't understand what [Scavello] was saying." Scavello also stated that the defendant's speech was slurred, a very slight odor of alcohol emanated from him and his groin area was wet. The defendant admitted that he had urinated on himself, telling Scavello that "after the accident, he just couldn't hold it anymore and had to go." Scavello further testified that while the defendant was

outside the van, he appeared "off balance, kind of wobbly when he was walking, very lethargic" and appeared under the influence of some type of drug. He stated that the defendant's pupils were extremely constricted, probably the smallest he had ever seen. The defendant also admitted to Scavello that he had smoked marijuana earlier in the morning, drank a Budweiser beer sometime between 9:30 and 10:15 a.m. and ingested two pills that he believed to be Vicodin at 11 a.m.

Thereafter, Scavello administered several field sobriety tests, all of which the defendant failed. On the basis of the defendant's performance on those field sobriety tests, as well as Scavello's observations, the defendant was placed under arrest and charged with operating a motor vehicle while under the influence of intoxicating liquor or drugs. Scavello next searched the defendant's van, which was filled with food, coffee cups, greasy tools and old pieces of wire. He detected no odor in the van.[3] Scavello then drove the defendant to the barracks of Troop D of the state police.

At the police barracks, the defendant was administered an Intoxilyzer test, which revealed that the defendant's alcohol level was 0.008, well below the 0.08 legal limit. The Intoxilyzer, which is calibrated to detect any hydrocarbon interferants, such as kerosene, during the breath test, registered no such error message. The defendant also gave the police a urine sample, which detected the presence of cocaine and its metabolite but no other substances.[4] Additional facts and procedural history will be provided as necessary.

---

[3] Scavello's observation that there was no odor in the van is vital because the defendant claims that his intoxication was the result of involuntary inhalation of kerosene fumes after a five gallon container of kerosene spilled, releasing kerosene fumes into the poorly ventilated van.

[4] Robert Powers, the state's toxicology expert, testified that the screening result did not rule out the presence of opiates such as Vicodin because the screening was designed to identify morphine and codeine and is less sensitive to other opiates. James O'Brien, an expert witness for the defendant, also testified that laboratory testing for opiates can lose its significance if the majority of the drug is excreted through urination before testing.

The defendant claims that there was insufficient evidence to support his conviction of operating a motor vehicle while under the influence of intoxicating liquor or drugs. According to the defendant, the evidence of impairment was not cognizable for purposes of proof pursuant to § 14–227a (a) (1) due to the fact that it was caused solely by his involuntary exposure to kerosene fumes in the van. According to the defendant, as he drove back to Brooklyn he was overcome by fumes from the kerosene that had spilled in the back of his van the prior evening. We conclude that the court properly rejected the defendant's hydrocarbon intoxication theory, and the court reasonably concluded that the cumulative force of the evidence established beyond a reasonable doubt that the defendant had been operating a motor vehicle under the influence of alcohol or drugs.

We begin by setting forth our standard of review. "In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [trier of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . [I]n viewing evidence which could yield contrary inferences, the [trier of fact] is not barred from drawing those inferences consistent with guilt and is not required to draw only those inferences consistent with innocence. The rule is that the [trier's] function is to draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Citation omitted; internal quotation marks omitted.) *State* v. *Solomon*, 103 Conn. App. 530, 539, 930 A.2d 716 (2007).

Moreover, our Supreme Court has stated: "[I]t does not diminish the probative force of the evidence that

it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . .

"[A]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [finder of fact], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Calabrese*, 279 Conn. 393, 402–403, 902 A.2d 1044 (2006).

Furthermore, we are mindful that the trier of fact is the arbiter of credibility. *State* v. *Russell*, 101 Conn. App. 298, 316, 922 A.2d 191, cert. denied, 284 Conn. 910, 931 A.2d 934 (2007). With respect to a challenge to the sufficiency of the evidence, we note that "[i]n considering the evidence introduced in a case, [triers of fact] are not required to leave common sense at the courtroom door . . . nor are they expected to lay aside matters of common knowledge or their own observations and experience of the affairs of life, but, on the contrary, to apply them to the facts in hand, to the end that their action may be intelligent and their conclusions correct."

(Internal quotation marks omitted.) *State* v. *Fauntleroy*, 101 Conn. App. 144, 153, 921 A.2d 622 (2007).

This court has defined driving under the influence of intoxicating liquor or drugs as having occurred when "a driver had become so affected in his mental, physical or nervous processes that he lacked to an appreciable degree the ability to function properly in relation to the operation of his vehicle." (Internal quotation marks omitted.) *State* v. *Gordon*, 84 Conn. App. 519, 526, 854 A.2d 74, cert. denied, 271 Conn. 941, 861 A.2d 516 (2004).

In the present case, the court heard evidence that the defendant drove his van into the rear of a stopped motorcycle at a well marked traffic signal. He had urinated on himself prior to exiting his vehicle. After exiting his vehicle, the defendant was stumbling, slurring his speech and behaving erratically. The defendant failed all field sobriety tests that were administered to him. The court also heard evidence that the defendant had constricted pupils and that his answers were slow and nonresponsive. Most significantly, the court heard evidence that the defendant admitted to Scavello that he had ingested marijuana, beer and Vicodin that morning. Furthermore, the defendant gave the police a urine sample, which detected the presence of cocaine and its metabolite. Although the urine test did not show the presence of opiates, the court reasonably could have concluded from the testimony of the state's toxicology expert witness, Robert Powers, and the defense's expert witness, James O'Brien, that the absence of opiates during the screening was explained by the defendant's having urinated at the scene and having excreted evidence of Vicodin ingestion. Finally, the court heard evidence that Scavello, who had received extensive training in the observation of intoxicated motorists and has stopped hundreds of drivers whom he suspected of driving under the influence, concluded that the defendant was intoxicated. See *State* v. *Windley*, 95 Conn.

App. 62, 66–67, 895 A.2d 270 (evidence sufficient to establish defendant operating motor vehicle under influence of intoxicating liquor when officer testified defendant's speech slurred, breath smelled of alcohol and defendant stated he had been drinking), cert. denied, 278 Conn. 924, 901 A.2d 1222 (2006).

Although the defendant asserts that his behavior was the result of involuntary inhalation of kerosene fumes, the court rejected that claim, finding that "it is unlikely that there was such hydrocarbon intoxication." The court heard testimony from both experts that the defendant's pinpoint pupil constriction could be explained by Vicodin ingestion. There was also testimony from Powers that kerosene inhalation would not have caused pinpoint constriction of the defendant's pupils. At the time of the accident, no credible witness, including trained police officers, reported the odor of kerosene in the van, on the defendant's clothing or on the defendant's breath. Moreover, Powers testified that significant hydrocarbon intoxication, as the defendant claims, would have been detected by the Intoxilyzer as an interferant during the defendant's breath test. Thus, the court reasonably determined that the defendant's explanation of involuntary intoxication by kerosene inhalation was not believable.

The evidence in the record supports the court's conclusion that the defendant had ingested Vicodin, alcohol and other drugs and operated his motor vehicle under the influence of alcohol or drugs as defined by § 14-227a (a) (1). Our review of the evidence, therefore, persuades us that the court reasonably concluded that the cumulative force of the evidence established beyond a reasonable doubt that the defendant had been operating a motor vehicle under the influence of alcohol or drugs. We further conclude that there was sufficient

evidence by which the court could find that the defendant was guilty beyond a reasonable doubt of recklessly operating a motor vehicle on a public highway.

The judgment is affirmed.

In this opinion the other judges concurred.