STATE OF CONNECTICUT *v.* DANIEL SOLOMON
(AC 33328)

Robinson, Bear and Sullivan, Js.

Argued December 4, 2012—officially released March 12, 2013

*Elizabeth M. Inkster*, assigned counsel, with whom was *Kiel Walker*, certified legal intern, for the appellant (defendant).

*Rocco A. Chiarenza*, deputy assistant state's attorney, with whom, on the brief, were *Scott J. Murphy*, former state's attorney, and *Alexander C. Beck*, deputy assistant state's attorney, for the appellee (state).

*Opinion*

BEAR, J. The defendant, Daniel Solomon, appeals from the judgment of conviction, rendered after a jury trial, of assault in the third degree in violation of General

Statutes § 53a-61 (a) (1) and two counts of disorderly conduct in violation of General Statutes § 53a-182 (a) (1). The defendant also was charged in a part B information with being a persistent offender in violation of General Statutes § 53a-40d for having previously been convicted of assault in the third degree. After the jury's finding of guilt as to the substantive offenses, the defendant pleaded guilty to the charge of being a persistent offender. On appeal, the defendant claims that the trial court improperly ruled that he had opened the door to the introduction of evidence of a prior misdemeanor assault conviction and, because his conviction was based on improperly admitted evidence of a prior conviction of assault, his conviction of being a persistent offender must be vacated. We affirm the judgment of the trial court.

On the basis of the evidence presented, the jury reasonably could have found the following facts. On June 9, 2010, the defendant and his fiancée, Brenda Karwoski, were engaged in a domestic dispute in their shared apartment, when Tiffany Channer, a female friend of Karwoski's, attempted to intervene. The defendant then assaulted Channer, grabbing her around the neck, causing her to be unable to breathe. During Channer's struggle with the defendant, she received several scratches on her chest.[1] Karwoski and Channer managed to escape from the defendant and subsequently from the apartment. Channer then telephoned the police, explaining that a domestic dispute had occurred between her best friend and a man, whom she identified as the defendant. Channer also told police that she had been injured. The police arrived on the scene and took statements from both women, who reported that the defendant had assaulted Channer. Subsequently, the police obtained a warrant for the defendant's arrest.

---

[1] Some of the scratches on Channer's chest were deep enough to cause scarring.

Following his arrest, the defendant was charged with assault in the third degree and two counts of disorderly conduct. Additionally, he later was charged with being a persistent offender. Following his conviction on all charges, the defendant was sentenced to a total effective term of three years of incarceration. This appeal followed.

The defendant claims that the court improperly ruled that, during his testimony, he had opened the door to the state's introduction of evidence of a prior misdemeanor assault conviction, and, because his current conviction was based on this improperly admitted evidence, his conviction of being a persistent offender must be vacated. The state contends that because the defendant opened the door to this evidence, he, therefore, cannot complain that it was used against him. We agree with the state.

The following additional facts are relevant to the defendant's claim. Prior to the start of evidence, the defendant filed a motion in limine, seeking to preclude the state from offering any evidence of his prior felony and misdemeanor convictions. The court ruled that only limited evidence of a 2003 felony conviction was admissible for impeachment purposes but that if the defendant opened the door during his testimony, the court could expand its ruling to allow the state to use additional evidence of prior convictions to attempt to impeach his credibility.

During the trial, the defendant tried to establish that it was Karwoski who had scratched Channer and that men do not scratch when they fight.[2] On cross-examination of the state's first witness, police Officer Phillip

---

[2] Additionally, following the close of evidence, the defendant sought permission to open the evidence to present the testimony of Karwoski, and the court granted that request. Karwoski testified on the defendant's behalf that it was she who had instigated a "tussle" with the defendant because she was intoxicated and that she, rather than the defendant, scratched Channer. She also testified that she and Channer had concocted their story about the defendant scratching Channer to get the defendant in trouble.

Violette, the first officer to respond to the scene, the defendant elicited the following testimony:

"Q. You've been to police training school, you said, police academy?

"A. Yep.

"Q. And there's a—you learn about physical contact or hand-to-hand combat . . . .

"A. Uh-huh. . . .

"Q. All right, and you're a man, obviously, but where I'm going with this is, do men scratch men in fights? Did you ever scratch a man in this hand-to-hand combat at the academy?

"A. In the academy, not that I remember.

\* \* \*

"Q. Okay, but just as a general principle, playing sports, your experience on the force, men, they get in a fight with another man, they don't—they might hit, punch, grab, throw down to the ground. Scratch, just tell me, tell me how you see it.

"A. Maybe.

"Q. Maybe, but not often, not likely.

"A. I've seen—in my eight years, I've seen it.

"Q. All right, was that another man that was scratched or a woman?

"A. Woman, man.

"Q. Women scratch men?

"A. Yes.

"Q. That we might know."

After the state rested, the defendant told the court that he would take the witness stand in his own defense.

Before permitting him to do so, the court carefully canvassed the defendant in relevant part as follows:

"The Court: One of the risks of testifying is that evidence that otherwise may not be admissible may become admissible as a result of your testimony. An example of that is, you may recall, that you have a criminal history. And, while I have precluded the state from introducing most of that criminal history, I would permit the state to elicit that you have a prior felony conviction, the one that's only seven years old. I'm not going to let them get into what the conviction is, but that you do have a felony conviction. Unless, during the testimony, something comes out in something you say, or a question that's asked that permits the state to get into the nature of that felony, or any other prior criminal history you might have. Do you understand, sir, that one of the risks of taking the [witness] stand is that among other things that would otherwise not be admissible, your criminal history could become relevant and admissible depending on what that testimony is? Do you understand that?

"The Defendant: Yes, Your Honor.

"The Court: Including what I've already let in, which is that you have a seven year old felony conviction. Do you understand that?

"The Defendant: Yes, Your Honor.

"The Court: Have you discussed with your lawyer the risks of taking the [witness] stand? All the risks that could come from that?

"The Defendant: Yes, Your Honor.

"The Court: All right, and it is your decision, then, to still take the [witness] stand in your own defense?

"The Defendant: Yes, Your Honor.

* * *

"The Court: . . . You do understand that once you take the [witness] stand . . . you subject yourself to cross-examination by the state. The state can ask you questions, and you will be required to answer them. You can't, then, change your mind and say, I invoke the fifth amendment. You do realize you have the right not to testify and not to incriminate yourself, but once you've made the decision to testify, you can't go back on that. You understand that?

"The Defendant: Yes, Your Honor."

When the defendant took the witness stand, he described his version of the night's events and testified that, as an observant Jew, he is "forbidden from having contact with a woman other than [his] immediate spouse." He explained: "After I told [Channer that] she was unwelcome [in the apartment], it was the mere fact that [Karwoski] was right there, and I could never, ever touch another woman, even being forbidden to do so as an observant Jew. I most certainly could never do such a thing right in front of my fiancée and put my hands on another woman. I was concerned that if I touched her in any way to try to keep her from coming inside the apartment that I might touch her in some other way incidentally that could be very, very offensive to my fiancée, which is why I never touched her. I never put a hand on her." He then stated that he "never touched her chest . . . never grabbed her neck . . . [and] never touched her at all." The defendant briefly discussed that he earlier had been in trouble with the legal system but that he had returned home following his 2003 felony conviction and had turned his life around. He testified that he is the assistant to a rabbi in New Britain and that he helps him in visiting the sick.

Following the defendant's direct testimony, the state sought, in part, to cross-examine the defendant about

his 2006 third degree assault conviction involving his then wife, where the defendant had grabbed her by the throat, scratching her neck. See *State* v. *Solomon*, 103 Conn. App. 530, 930 A.2d 716 (2007). The state, in part, maintained that this evidence was admissible to impeach the defendant's attempts to "extol his virtue and his moral[s] based on his religion . . . ." The state also argued that the defendant had not gone home after his 2003 felony conviction, but, rather, had gone to prison.

The court, after relistening to some of the defendant's testimony, concluded that the defendant had left the impression with the jury that "he had a one time conviction, and then, he turned his life around, went home and became a law-abiding citizen, when in fact that is not the reality." The court went on to discuss the defendant's statement that under Judaism, he could not have contact with a woman other than an immediate spouse, and his questioning of Officer Violette in which the defendant attempted to establish that a man would not scratch a woman.[3] The court did not permit the state to question the defendant about the additional convictions stemming from the 2006 assault, nor about the fact that the defendant had gone to prison, rather than home, following his 2003 felony conviction. The court concluded, however, that the defendant had

---

[3] The defendant argues that the court permitted the state to introduce his 2006 assault conviction because it misinterpreted his statement that he is "forbidden from having contact with a woman other than [his] immediate spouse." He argues that the court interpreted this to mean that he was stating that he never would touch another woman, when, in fact, he clearly was stating that he never would touch a woman other than his wife. We conclude that this argument has no merit. Although the state argued that the 2006 conviction was admissible, in part, to impeach the defendant's statement that he would not "lay his hands on another woman," the court, after having the defendant's testimony played back, specifically stated that the defendant had testified that "Judaism prohibits contact with a woman other than an immediate spouse." It is clear, therefore, that the court did not misinterpret the defendant's testimony.

opened the door to the admission of the 2006 assault conviction and the facts related thereto.

During cross-examination, the state then asked the defendant only one question related to the 2006 assault conviction:

"Q. And isn't it true that after [your 2003 felony conviction] specifically, May 16, 2006, you were found guilty of assault in the third degree based on an incident with your wife where you scratched her.

"A. Yes."[4]

In its instructions to the jury, the court, sua sponte, gave a limiting instruction regarding the evidence of two of the defendant's prior convictions: "You may recall that you heard evidence that the defendant was convicted of two crimes, a felony and a misdemeanor assault in the third degree. The evidence is only admissible on the question of credibility of the witness, that is, the weight that you will give the witness' testimony. The defendant's prior convictions bear only on that witness' credibility. It is your duty to determine whether this witness is to be believed wholly, or partly, or not at all. You may consider the witness' prior convictions in weighing the credibility of that witness and give such weight to those facts that you decide is fair and reasonable in determining the credibility of that witness."

Although "[e]vidence that a criminal defendant has been convicted of crimes on prior occasions generally is not admissible . . . [w]hen . . . a party opens the door to a subject that pertains directly to the credibility of the witness, he does so at his own risk. . . . In such cases, the rule is that a party who delves into a particular

---

[4] On redirect examination, defense counsel then asked the defendant additional questions about the 2006 assault, as did the state during recross-examination. Defense counsel then asked further questions during re-redirect examination.

subject during the examination of a witness cannot object if the opposing party later questions the witness on the same subject. . . . Even though the rebuttal evidence would ordinarily be inadmissible on other grounds, the court may, in its discretion, allow it where the party initiating inquiry has made unfair use of the evidence. . . . The doctrine of opening the door cannot, of course, be subverted into a rule for injection of prejudice. . . . The trial court must carefully consider whether the circumstances of the case warrant further inquiry into the subject matter, and should permit it only to the extent necessary to remove any unfair prejudice which might otherwise have ensued from the original evidence. . . . [I]n making its determination, the trial court should balance the harm to the state in restricting the inquiry with the prejudice suffered by the defendant in allowing the rebuttal." (Citations omitted; internal quotation marks omitted.) *State* v. *Phillips*, 102 Conn. App. 716, 733–34, 927 A.2d 931, cert. denied, 284 Conn. 923, 933 A.2d 727 (2007).

"Evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice. . . . In considering whether the trial court abused its discretion, the unquestioned rule is that great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness . . . ." (Internal quotation marks omitted.) Id., 732.

In assessing the defendant's claim, we find especially persuasive the decision of our Supreme Court in *State* v. *Hernandez*, 224 Conn. 196, 618 A.2d 494 (1992). In *Hernandez*, the defendant, in part, had claimed that the trial court improperly had permitted the state to go beyond the scope of the direct examination of him and to delve into his purported violence toward women.

Id., 203–204. The trial court had found that the defendant had opened the door to this evidence by testifying on direct examination that he, inter alia, was a peaceful churchgoing man. Id., 206. Following the defendant's testimony, the state attempted to elicit testimony from the defendant about a specific violent relationship he had had with a woman and a sexual assault he was alleged to have perpetrated against her, but the defendant objected. Id., 205. The trial court held that, although the alleged sexual assault was not relevant to the offense with which he was charged, the murder of a woman he was accused of stabbing to death, and the prejudicial effect of the testimony on this topic outweighed its probative value, the "testimony regarding alleged physical violence against the woman was admissible. The defendant had opened the door to this testimony when he created an impression of himself as a peaceful man with good relationships with women." Id., 206. Affirming the judgment of the trial court, our Supreme Court held that "[a]lthough the defendant did not state on direct examination that he was never violent toward women, the record supports an inference that his relationships were nonviolent. The trial court did not abuse its discretion when it allowed the state to cross-examine the defendant to modify this inference." Id., 209.

"When a witness voluntarily testifies, as did the defendant here, he asks the jury to believe him. The jury should be informed about the sort of person asking them to take his word. . . . Matters which might not be strictly relevant on direct examination may be so on cross-examination where that matter is explored for the purpose of credibility. Given that function of cross-examination in shedding light on the credibility of the witness' direct testimony, [t]he test of relevancy is not whether the answer sought will elucidate any of the main issues, but whether it will to a useful extent aid

the court or jury in appraising the credibility of the witness and assessing the probative value of the direct testimony. . . . A question is within the scope of the direct examination if it is intended to rebut, impeach, modify or explain any of the defendant's direct testimony . . . ." (Citations omitted; internal quotation marks omitted.) Id., 207.

In the present case, the defendant, on direct examination, attempted to portray himself as a peaceful, nonviolent man, who assisted a rabbi with his hospital visits to the sick, after having turned his life around by reforming his behavior following a one time criminal conviction in 2003. The trial court, therefore, did not abuse its discretion when it allowed the state to attempt to challenge this inference during cross-examination.

The defendant also argues that even if we conclude that he opened the door to this evidence, the court, nevertheless, abused its discretion by failing to find that the evidence was overly prejudicial and, therefore, inadmissible. We disagree.

"All evidence adverse to a party is, to some degree prejudicial. To be excluded, the evidence must create prejudice that is undue and so great as to threaten injustice if the evidence were to be admitted." (Internal quotation marks omitted.) State v. Hernandez, 28 Conn. App. 126, 138, 612 A.2d 88, cert. denied, 223 Conn. 920, 614 A.2d 828 (1992). Here, the record demonstrates that the court recognized the prejudicial degree of this evidence and properly weighed the probative value of the evidence versus its prejudice to the defendant. The court further minimized the prejudice by, sua sponte, giving a limiting instruction to the jury and fully explaining the proper use of this evidence. We presume, without evidence to the contrary, that the jury followed the court's instructions. See State v. Griggs, 288 Conn. 116, 142, 951 A.2d 531 (2008) ("court took steps to

minimize any prejudice to the defendant by instructing the jury that it could not consider the defendant's domestic violence convictions as evidence of his criminal propensity, and we presume, without evidence to the contrary, that the jury followed the trial court's instructions"). We conclude, therefore, that the court did not abuse its discretion when it permitted the state to impeach the defendant's credibility with evidence of his 2006 assault conviction.

The judgment is affirmed.

In this opinion the other judges concurred.

