******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* ZACHARY F.*
(AC 33908)

Lavine, Keller and Flynn, Js.

*Argued March 13—officially released July 15, 2014*

(Appeal from Superior Court, judicial district of Hartford, O'Keefe, J.)

*Richard E. Condon, Jr.*, senior assistant public defender, for the appellant (defendant).

*Matthew A. Weiner*, deputy assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Donna Mambrino*, senior assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, J. After a jury trial, the defendant, Zachary F., appeals from the judgment of conviction for kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (B); kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (C); cruelty to persons in violation of General Statutes § 53-20 (a) (1); and sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1). On appeal, the defendant claims that the trial court abused its discretion and prejudiced him by improperly admitting prior misconduct evidence concerning his violent actions toward the victim of his crimes.

Even if we were to assume without deciding that the admission of the challenged evidence was improper, we conclude that the defendant has not shown the requisite harm from its admission because the other evidence against him was overwhelming. First, the defendant made a written statement incriminating himself to the police. Second, he videotaped much of the conduct for which he was convicted. Third, he took the stand at his trial and made factually incriminatory statements in his testimony. For these reasons, any error was harmless. Therefore, we affirm the judgment of conviction.

The jury reasonably could have found the following facts. The defendant had a previous relationship with the victim in the case and was the parent of two children with her. That relationship had ceased and he had initiated a new relationship with another woman who was expecting his child. He learned that the victim was dating another man. On December 13, 2009, in Hartford, he entered the victim's car uninvited and threatened to smash her head into the windshield if she refused to drive them to her home. The victim was caught by surprise when the defendant forced his way into her automobile and testified to being fearful when he threatened to smash her face into the hard parts of the car and ordered her to drive to her home.

After they entered her house, the defendant displayed duct tape and grabbed the victim by her arm when she tried to escape. He then took off most of her clothes, duct taped her legs, hands, and mouth, and threatened to cut off her breath by taping her nose shut. He admitted to the police, and in his cross-examination at trial, to restraining her with the duct tape. She continued to make sounds of protest, though gagged with duct tape. He claimed to have been "disrespected" by the fact that she had seen another man after he had forbidden her from doing so. The victim also testified that she was forced, without her consent, to perform fellatio on the defendant because she feared she might otherwise be killed. The defendant videotaped this intercourse. He also videotaped images of her naked private body parts

and threatened to forward these images to her friends and to her place of employment.

During trial, the prosecution showed to the jury the videotape that had been taken by the defendant. The defendant claimed that the victim's participation in all of this was voluntary and a form of bondage to which she consented. The defendant was convicted of all four crimes for which he was charged. This appeal followed.

On appeal, the defendant claims that the court abused its discretion by admitting evidence of his prior misconduct under the "opening of the door" doctrine. He further argues that he was prejudiced by the admission of the prior misconduct evidence and that the admission was harmful. The court allowed the jury to hear testimony concerning the defendant's prior acts of violence against the victim, which occurred approximately three weeks before the December 13, 2009 incident. Before trial, the defense counsel filed a motion to require notice of uncharged misconduct and a motion to exclude evidence of prior convictions. In the argument on these motions, conducted outside the jury's presence, the defense counsel advised the court that there were three prior situations, one involving a different complainant, and two others involving the victim. One of the prior incidents involving the victim stemmed from domestic violence and the other resulted in a charge of assault in the third degree, in violation of General Statutes § 53a-61. When both the state and the defendant put on record that they had no intention of raising these matters at trial, the court did not rule on the defendant's motion.

The following testimony, elicited from the victim on cross-examination, formed the basis for the court's determination that defense counsel had opened the door to the admission of evidence of the defendant's acts of misconduct prior to the December 13, 2009 incident. To place this cross-examination evidence in context, we first note that, during the victim's direct testimony, the prosecutor asked her if she had told the defendant's mother about the December 13, 2009 events when she went back to the defendant's mother's home to retrieve her two children. The victim responded that she had not done so, because she wanted to act as normally as she could and get to safety. Then, on cross-examination, defense counsel asked a series of questions, one of which was: "Before December 13, 2009, you confided in [the defendant's mother]?" He then reconfirmed that the victim had not told the defendant's mother of the December 13, 2009 incident.

On redirect examination, over the objection of defense counsel, the court ruled that the cross-examination had "opened the door" to admission of prior misconduct evidence. As such, the court permitted the admission of testimony from the victim that she had told the defendant's mother, prior to the December 13,

2009 incident, that the defendant had grabbed her by the shirt, slammed her on the ground, bashed her on the head, took her by the feet and tossed her over, grabbed her by the neck, pinned her against the wall and choked her, and bruised her foot, causing it to swell, and that the defendant's mother was upset when the victim informed her of these events. The defendant argues that the trial court abused its discretion and prejudiced him by allowing the jury to hear this testimony.

"As a general rule, evidence of prior misconduct is inadmissible to prove that a criminal defendant is guilty of the crime of which the defendant is accused . . . . Such evidence cannot be used to suggest that the defendant has a bad character or a propensity for criminal behavior." (Internal quotation marks omitted.) *State* v. *Randolph*, 284 Conn. 328, 340, 933 A.2d 1158 (2007). Such evidence may become admissible through the doctrine of "opening the door." *State* v. *Solomon*, 141 Conn. App. 270, 278–79, 60 A.3d 1039, cert. denied, 308 Conn. 939, 66 A.3d 881 (2013). "[W]hen . . . a party opens the door to a subject that pertains directly to the credibility of the witness, he does so at his own risk. . . . In such cases, the rule is that a party who delves into a particular subject during the examination of a witness cannot object if the opposing party later questions the witness on the same subject. . . . Even though the rebuttal evidence would ordinarily be inadmissible on other grounds, the court may, in its discretion, allow it where the party initiating inquiry has made unfair use of the evidence. . . . The trial court must carefully consider whether the circumstances of the case warrant further inquiry into the subject matter, and should permit it only to the extent necessary to remove any unfair prejudice which might otherwise have ensued from the original evidence." (Internal quotation marks omitted.) Id.

The defendant claims that the court erred in admitting the evidence of prior misconduct. "In most cases involving error, constitutional or otherwise . . . harmless error analysis applies." *State* v. *Stuart*, 113 Conn. App. 541, 551, 967 A.2d 532, cert. denied, 293 Conn. 922, 980 A.2d 914 (2009). We do not reach the question of whether the court improperly admitted the evidence of the defendant's prior acts of misconduct because the defendant has failed to show that the admission of the evidence was harmful.

The following principles enunciated by our Supreme Court guide our harmless error analysis. The defendant concedes that any potential error was not of constitutional magnitude. "[A] nonconstitutional error is harmless when an appellate court has a fair assurance that the error did not substantially affect the verdict." (Internal quotation marks omitted.) *State* v. *Sawyer*, 279 Conn. 331, 357, 904 A.2d 101 (2006), overruled in part

on other grounds by *State* v. *DeJesus*, 288 Conn. 418, 454–55 n.23, 953 A.2d 45 (2008). "[W]hether [the improper admission of a witness' testimony] is harmless in a particular case depends upon a number of factors, such as the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. . . . Most importantly, we must examine the impact of the [improperly admitted] evidence on the trier of fact and the result of the trial." (Internal quotation marks omitted.) *State* v. *Sawyer*, supra, 279 Conn. 358. The defendant has the burden of showing that admission of the evidence was harmful. Id. In the present case, the most important factors are the overall strength of the prosecution's case and the impact of the evidence and the jury instructions on the trier of fact. *State* v. *Pascual*, 305 Conn. 82, 94, 43 A.3d 648 (2012).

In reviewing the strength of the state's case and the impact on the jury of the disputed evidence and the effect of the jury instructions, we first set out the statutes of which the defendant was found guilty.

Section 53a-92 (a) provides in relevant part: "A person is guilty of kidnapping in the first degree when he abducts another person and . . . (2) he restrains the person abducted with intent to . . . (B) accomplish or advance the commission of a felony. . . ."

Section 53a-92 (a) provides in relevant part: "A person is guilty of kidnapping in the first degree when he abducts another person and . . . (2) he restrains the person abducted with intent to . . . (C) terrorize [her] . . . ."

Section 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person . . . or by the threat of use of force against such other person . . . ."

Finally, § 53-20, entitled "Cruelty to persons." provides in relevant part: "(a) (1) Any person who intentionally tortures, torments or cruelly or unlawfully punishes another person or intentionally deprives another person of necessary food, clothing, shelter or proper physical care shall be fined not more than five thousand dollars or imprisoned not more than five years or both. . . ."

The defendant does not claim on appeal that there was insufficient evidence of the elements of any of the crimes. Instead, he argues that evidence of prior misconduct was improperly admitted and was prejudicial, and that the claimed error was not harmless. Our

review of the record indicates that the defendant has not shown that any claimed error was harmful because the evidence he supplied in a written statement to police investigators, a videotape of his criminal conduct toward the victim, and his own incriminating trial testimony was such overwhelming evidence of his guilt that the jury was not likely swayed by admission of the prior uncharged acts of misconduct. The admission of the defendant's prior acts of misconduct did not vitiate the strength of the prosecution's case; the prosecutor did not reference any of the challenged evidence in her summation to the jury.[1]

The information read to the jury at the start of trial charged in its first count that the defendant committed the crime of kidnapping in the first degree with the intent to commit the crime of cruelty to persons. There was evidence from the victim that she was threatened when the defendant climbed into her car and ordered her to drive to her home, and when he grabbed her arm to prevent her from running when he displayed duct tape. Her testimony and his own videotape showed that he cruelly bound her naked body with duct tape after taking off most of her clothes, leaving her restrained for over an hour, unable to breathe properly because her mouth was taped. The binding and her muffled protests were visible on the videotape that he had made, and which the jury heard and saw. There was compelling evidence of the elements of kidnapping.

The same evidence supported his conviction for cruelty to persons in violation of § 53-20 (a) (1). There was a massive body of evidence from his own words to the police that he committed a kidnapping with the intent to terrorize his victim and that he sexually assaulted her and cruelly tormented her. He admitted to the police in a written statement that he "just wanted to scare her, so I taped her up." In the same written statement he admitted that he brought the duct tape with him "for the intent of taping her up." In his testimony, the defendant admitted to binding the victim with duct tape and videotaping her while she was restrained. His video showed the victim struggling, bound with duct tape, naked, gagged and the defendant intimating, while both her mouth and nose were duct taped, that she might die. The victim testified that her phone rang while she was bound with the duct tape and that the defendant "asked me if I wanted to get the call because it could be my last call."

The jury viewed the videotape and heard the victim's muffled cries while she was gagged. It sounded at one point like she said, "Please stop." The defendant was heard saying to the victim, "You don't like this, do you?" The defendant videotaped her naked private parts. He admitted in his written statement that he "took some photos and videos of her" on his cell phone to embarrass her, and that he threatened to send them to her friends.

The defendant also admitted in his testimony that he bound the victim with duct tape in order to embarrass her. The victim began vomiting at one point in her ordeal. The defendant refused her request for water when her mouth became dry after being gagged.

There was overwhelming evidence that the defendant engaged in fellatio with the victim and that it was not consensual. Prior to his sexual assault of her, she had been abducted, terrorized, bound hand and foot, gagged, treated cruelly, and led to fear for her own life by the defendant. In the face of such evidence, we conclude that the defendant has failed to show harmfulness because it is highly unlikely that any jury would have been influenced in its verdict by the prior misconduct evidence.

The defense that the defendant presented at trial was that the victim voluntarily submitted to all of this. This defense of consent is belied by the defendant's own admissions and the videotape that he created. The defendant admitted in his testimony that he heard the victim "begging and pleading" for him to release her and that he refused to do so. These admissions and the videotape of his conduct toward the victim made the state's case against him overwhelmingly strong. It was not simply a credibility contest between an accused and a victim, where the jury had to decide whether the defendant or the victim's testimony was more credible. Instead it was one in which the victim's sworn testimony was corroborated by some of the defendant's own statements, his in-court testimony, and his self-produced videotape—all of which vividly painted a picture for the jury that these crimes had been committed against the victim without her consent. In light of the strength of the state's case against him, the defendant has not shown that the jury's verdict was affected by the admission of prior misconduct evidence.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with our policy of protecting the privacy interests of the victims of sexual assault, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[1] The court did not issue a limiting instruction on the challenged evidence, nor was one requested.